## ADDISON P. COOK v. FRANK CLINTON.

*Ejectment—Adverse possession—Tenant in common—Withdrawal of special questions to jury.*

1. Where the *occupant* of land under tax titles purchased an undivided eighth of the original government title of an heir, and, on the trial of an ejectment suit brought by the owner of the remaining seven-eighths, set up *such* adverse possession under the statutes as a defense,—

   *Held*, not error to instruct the jury that while such purchase constituted defendant *prima facie* a tenant in common with the plaintiff, and prevented the defendant from thereafter holding adversely to such co-tenant, yet such *prima facie* case might be overcome by evidence that the original possession was continued by defendant with the intention to exclude the plaintiff from any

| | |
|---|---|
| 64 | 309 |
| 70 | 96 |
| 64 | 309 |
| 102 | 460 |
| 64 | 309 |
| 106 | 314 |
| 64 | 309 |
| 110 | 351 |
| 64 | 309 |
| 113 | 190 |
| 64 | 309 |
| 122 | 10 |
| 64 | 309 |
| 136 | ²263 |
| 64 | 309 |
| 145 | ¹301 |

right or interest therein, which question was properly submitted to the jury under the evidence in the case.

2. Adverse possession under the statute must be open, notorious, continuous, exclusive, visible, and distinct, as well as adverse. There must be an *actual* occupancy, as distinguished from constructive possession, of a portion or all of the premises claimed; not necessarily living thereon, for, if the premises are *inclosed* and cultivated, this would be a sufficient actual occupancy; and if crops were continually grown thereon, this would be a visible occupancy; and though in the interim between harvest and recropping no person was actually on the land, and nothing done thereon, yet, if such cropping continued from year to year, this would be a continuous and notorious occupancy, within the definition above given.[1]

3. A defendant submitted special questions to the jury, and on their return into court for further instructions withdrew the same, with the permission of the court, in the absence of plaintiff's attorney, for which neither the court nor defendant was in fault. The facts asked to be found were submitted in the general charge, and the case was one proper to be submitted to the jury.

*Held,* that error could not be assigned by the plaintiff on account of such withdrawal.

Error to Kent. (Montgomery, J.) Argued October 28, 1886. Decided January 20, 1887.

Ejectment. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Norris & Uhl,* for appellant.

*Taggart & Denison,* for defendant.

SHERWOOD, J. This case was an action of ejectment to recover the undivided seven-eighths part of 40 acres of land lying in the county of Kent.

The defendant claimed by adverse possession under tax titles, and one-eighth under the original title.

The cause was tried in the Kent circuit, before Judge

---

[1] See *Beecher v. Galvin,* 39 N. W. Rep. 469, as to *necessity* of land being fenced.

Montgomery, by jury, and the defendant prevailed. The plaintiff brings error. Ten errors are assigned; two only relate to the admission of testimony. One of these was to the introduction in evidence of the deed from Jacob W. Winsor to John French, dated June 1, 1868, and the other was to the admission of the record of the patent from the State of Michigan to Nathaniel Newberry. There was no error in admitting these conveyances, and those assignments were abandoned on the hearing.

Nathaniel Newberry bought of the State, about the year 1847, the land in question, and received a patent therefor. He died in 1849, leaving eight children, one of whom (Phœbe Jane) was a minor.

One of the children, named Nathaniel Newberry, Jr., on the first day of January, 1851, mortgaged the land in question, with other parcels, to the plaintiff; and on June 16, 1851, the widow and other children, except the minor, quit-claimed their interest in the mortgaged premises to Nathaniel Newberry, Jr., who died in January, 1853, leaving one child, a daughter.

The sale under the mortgage foreclosure occurred on the twenty-second day of April, 1853, and is the only source of plaintiff's title, the property never having been redeemed from the sale.

The daughter of Nathaniel Newberry, Jr., married Francis M. Bissell.

There is no question of the right and title of the defendant to the one-eighth of the property.

The property in question was sold for the taxes of 1853 to J. W. Winsor, and deeded. J. W. Winsor sold the same to George W. Hooker, and deeded it October 2, 1858. Hooker sold and conveyed the property to Jacob W. Winsor on the twenty-eighth day of February, 1859. The land was again sold by the Auditor General to Zenas G. Winsor, for taxes of 1857, and deeded January 12, 1860.

Jacob W. Winsor and Zenas G. Winsor quitclaimed the property to Jackson French on the eighteenth day of October, 1860. French and wife quitclaimed the premises to Asa B. Gilbert, John J. Lacey, and V. M. Hamilton, on the twelfth day of March, 1861. Asa Gilbert died previous to February, 1866, and Mary E. Van Valkenburg was his widow.

February 28, 1866, John J. Lacey and wife and Mary E. Van Valkenburg quitclaimed the property to Charlotte French. Jacob W. Winsor quitclaimed the premises on the first day of June, 1868, to John French, and John French and Charlotte French, his wife, conveyed the same to Matilda Clinton, on the twenty-fourth day of June, 1870. Matilda Clinton died, leaving Frank Clinton, the defendant, her only surviving child, in possession of the property.

Phœbe Jane, on July 11, 1868, long after she had become of age, and had married a Mr. Sherman, conveyed her individual one-eighth of the lands in controversy to Mary A. Bissell; and Mary A. Bissell, September 2, 1868, conveyed the same to Francis M. Bissell; and Francis M. Bissell quitclaimed the said land to Matilda Clinton, subject to tax titles, November 4, 1872, and before Matilda died.

The foregoing conveyances, ending with Màtilda Clinton, and all of which were duly recorded, show the chain of paper title under which the defendant and his grantors took possession of the property, and have continued the same, and under which and his tax titles he claims to be entitled to the property in suit.

In considering the question of possession under defendant's titles, and whether or not it was adverse, their validity is of no particular consequence.[1]

The defendant claimed continuous adverse possession of the property in himself and his grantors from the date of the

---

[1] See *Chamberlain v. Ahrens,* 55 Mich. 112; *Reilly v. Blaser,* 61 Id. 399 (head-note 2).

deed to J. W. Winsor, in 1853, down to the time of the commencement of this suit, in 1884, and gave testimony tending to show such possession. The possession thus claimed, and its character, was controverted by the testimony offered by the plaintiff. A part of the plaintiff's testimony upon this subject was the deeds from Phœbe Jane to Mary A. Bissell, and from Mary A. Bissell to Francis M. Bissell, and from Francis M. Bissell to Matilda Clinton. It was claimed by the plaintiff that Mrs. Clinton's purchase of the Bissell title constituted her a tenant in common of the property, it conveying to her the original title to one-eighth of the property, and that she could not be an adverse holder thereafter.

The circuit judge, in his charge, held that *prima facie* this was true, but that the *prima facie* case upon this point might be overcome by evidence that the possession Mrs. Clinton then had she continued under the claim of an exclusive right, and with the intention to exclude the plaintiff from any right or interest therein; that such possession, even though against a co-tenant or tenant in common, was adverse, and, upon the evidence, submitted this question, with the other facts in the case, to the jury; and to this portion of the charge counsel for plaintiff excepted.

We see no error in this charge. The plaintiff knew of the hostile character of Mrs. Clinton's possession. There may be some question, where the party does not go into possession under the conveyance which creates the co-tenancy, whether such conveyance should be presumed to destroy an adverse holding then existing. Be this as it may, certainly the charge was within the previous decisions of this Court. *Dubois v. Campau,* 28 Mich. 304; *Campau v. Dubois,* 39 Id. 274; *Sands v. Davis,* 40 Id. 14; *Campau v. Campau,* 44 Id. 31; *Knowles v. Brown,* 69 Iowa, 11 (28 N. W. Rep. 409).

The court charged the jury:

" The defense is that this title of the plaintiff has been wholly divested by the adverse possession, continued for the

statutory period. All adverse possession must be open, notorious, continuous, exclusive, visible, and distinct, as well as adverse. Now, what is meant by this is that there must be an actual occupancy, as distinguished from a constructive possession, of the property; that is, some one must be in actual possession of the property. Not necessarily living upon the property; if the property is inclosed and cultivated, this would be a sufficient actual occupancy; and if crops were continually growing upon the premises, this would be a visible occupancy; and even though in the interim between the harvesting of a crop and the recropping of the land the succeeding spring no person was actually upon the premises, and nothing done with them, yet, if year after year the land was thus cropped and cultivated, this would be a sufficiently continuous possession, within the meaning of the term as I have given it to you.

"So, a possession is sufficiently notorious if it is open and visible, and the premises are actually occupied so that the people passing to and fro past the premises may see these visible evidences of occupation. This would make it notorious, among those familiar with the premises. It is distinct when it is clearly defined.

"And in this case I instruct you that if the defendant in this case went into possession of these premises, described in the deed of conveyance under which he claims, that deed would define the extent of his occupancy. It would not be necessary for him to occupy each acre of the premises. If he occupied some portion of it, that would be a distinct occupancy of the whole, as defined by the deed under which he entered into possession. The claim must be hostile to the plaintiff." [1]

After thus defining and explaining what kind of possession is necessary to become adverse, the circuit judge, among other things, charged the jury as contained in the following paragraphs, and to each of which counsel for the plaintiff excepted:

"1. Adverse possession of the character which I have defined, for a period of fifteen years, gives a complete title in this State, and defeats the record title of one claiming from the government. And if the defendant has held

---

[1] See *Bird v. Stark*, 33 N. W. Rep. 754, as to actual knowledge of adverse possession.

adverse possession such as I have defined, for the period of ten years, under or through the so-called Winsor tax title, the action would be barred, and the plaintiff cannot recover in this action; and this would be true if only a portion of the Winsor title was vested in him.

"2. In stating this period of occupancy, gentlemen, I mean to state, and to be understood as stating, that that period of occupancy must have been for the period of fifteen years, or ten years, respectively, prior to the eleventh day of February, 1884. That is the date of the commencement of this suit; and, of course, the adverse possession must have been sufficient prior to the date of this suit to defeat the plaintiff's action, or he would be entitled to recover under the instructions I have given you.

"3. You will observe that the sole question for you to determine in this case is whether there has been this adverse possession of the character which I have defined, adverse to the plaintiff, since the parties became co-tenants, as well as before, and continued for a period of fifteen years; or if you find that the defendant held under a tax title,—the Winsor tax title, so called,—whether such possession as I have defined, and so adverse to the plaintiff, has continued for a period of ten years prior to the commencement of this suit, on the eleventh day of February, 1884. If you find either of these questions in the affirmative, your verdict must be for the defendant; if you find them in the negative, both of them, your verdict must be for the plaintiff.

"4. I further instruct you, if the defendant held adversely and in adverse possession of the premises, within the meaning of that term as I have defined it to you in my charge, which I will not here repeat, for ten years, under or through the so-called Winsor tax title, that the action would be barred by the plaintiff, and the plaintiff would not be entitled to recover, and that this would be true if only a portion of the Winsor title was vested in the defendant; if he went in under a tax title, and held under a tax title, and there was such an adverse possession as I have defined to you was requisite to constitute the adverse possession, and that continued ten years under that tax title, that this would vest the title in the defendant, and the plaintiff could not recover."

We see nothing objectionable in these four paragraphs of the charge. They state the law correctly as applied to the facts of this case as they appear upon the record. How. Stat. § 8698; *Yelverton v. Steele,* 40 Mich. 538; *Hamblin v. Warner,*

30 Id. 95; *Perkins v. Nugent*, 45 Id. 156; *Sparrow v. Hovey*, 44 Id. 63; *Campau v. Lafferty*, 43 Id. 429; *Bower v. Earl*, 18 Id. 367.

The withdrawal of the special requests to find could work no prejudice to the plaintiff. He did not present them, or ask them to be given, and made no objection to their withdrawal. The record shows the attorney for the plaintiff was not present when the withdrawal was made, but it does not show that his absence was from any fault of the court or the defendant. Really, all the facts asked to be found were submitted in the general charge, and the case was one proper to be submitted to the jury.

We have now noted all the assignments needing consideration in this opinion. We have found no error in the record.

The judgment must be affirmed.

The other Justices concurred.