PERCY T. COOK v. ROBERT M. MONTGOMERY, KENT CIR-
CUIT JUDGE.

*Execution sale—Good-faith purchaser—New trial—Ejectment.*

1. As a *general* rule, the subsequent granting of a new trial, or the reversal or vacation of the judgment, does not affect the title of a *good-faith* purchaser at an execution sale made to satisfy said judgment.

2. A purchaser at an execution sale made to satisfy a judgment recovered by a plaintiff in ejectment for the *value* of the land, on his electing to abandon it to the defendant, takes his title subject to the *right* of the defendant to defeat it by taking a new trial at any time within the statutory *three* years.

*Mandamus.* Submitted April 18, 1888. Denied April 27, 1888.

Relator applies for a *mandamus* to compel respondent to vacate an order setting aside an execution and vacating a sale made thereunder. The facts are stated in the opinion.

*Edmund D. Barry*, for relator.

*Taggart & Denison*, for respondent.

[The points of counsel are fully stated in the opinion.—REPORTER.]

MORSE, J. Application for a writ of *mandamus* to set aside and vacate an order entered January 17, 1888, in the case of *Addison P. Cook, Plaintiff, v. Vincent J. Goldsmith and Mary A. Goldsmith, Defendants,* by Hon. Robert M. Montgomery, circuit judge, setting aside an execution in said cause, and vacating a sale upon said execution to the relator

of certain lands levied upon and sold by virtue of said execution; said lands being in Kent county.

The petition and the return show the following facts and circumstances:

In May, 1881, Addison P. Cook commenced an action of ejectment in the circuit court for Kent county to recover possession of certain lands in said county, making the Goldsmiths, husband and wife, defendants.

In such suit the defendants filed a claim for the value of the improvements, and the plaintiff a counter-claim under the statute.

Judgment was rendered for the defendants in February, 1884. In March following the plaintiff was granted a new trial.

The case was tried a second time, and in September of the same year, upon written findings of fact and law, the court gave judgment for the plaintiff. The value of the improvements was found to be $1,470, and the value of the lands, at the time defendants obtained their title, was determined at $630.

In November, 1884, the plaintiff filed his election to abandon the land, and to recover his money judgment of $630, and costs of suit. Such judgment was accordingly entered November 29, 1884. The costs were taxed February 6, 1885, at $180.35.

June 6, 1885, an execution was issued on this judgment, and on July 7, in the same year, a levy under it was made upon the premises. On September 9, 1885, the premises were sold by and under this levy to the relator, Percy T. Cook, for $896.57. On the same day the sheriff's certificate of sale was duly made and filed in the office of the register of deeds of Kent county, and a copy delivered to relator. The writ of execution was returned to the circuit court as satisfied in full.

The plaintiff's chain of title, under which he claimed and succeeded in his suit, was derived through a patent from the

United States to one Nathaniel Newberry, Sr.; a deed from certain of said Newberry's heirs to Nathaniel Newberry, Jr.; and a mortgage from said Newberry, Jr., to said Addison P. Cook, by the foreclosure of which mortgage, and a sale thereunder, and his purchase at such sale, said Addison P. Cook made title to the whole premises in fee.

Nathaniel Newberry, Sr., left surviving him a widow, Jane Newberry, and eight children, who were the sole heirs to said premises, with other real estate of their father. One of the children was named Phebe Jane Newberry.

The deed to Nathaniel Newberry, Jr., was signed by all the children but Phebe Jane, and by the widow, Jane Newberry. At the time of the trial it was supposed by all the parties that the signature of Jane Newberry to this deed was the signature of the daughter Phebe Jane. Acting upon the mutual and general mistake, the attorneys for the Goldsmiths stipulated with the attorneys of Cook, upon such trial, to the effect that the persons executing such deed to Nathaniel Newberry, Jr., were the sole and only heirs at law of Nathaniel Newberry, Sr. The original title was thus taken as granted to be wholly in Cook.

Before the time for redemption of the premises had expired under the execution sale to Percy T. Cook, and on July 7, 1886, the attorneys of the Goldsmiths in said ejectment suit moved the court for a new trial. This motion was based upon a showing of this defect in the title of Addison P. Cook, heretofore noticed, which it was claimed had not been discovered until a short time before, when it had been ascertained by testimony taken in the case of *Cook v. Clinton,* 64 Mich. 309 (31 N. W. Rep. 317), that the daughter Phebe Jane Newberry had not conveyed her interest in said deed to her brother, and that the plaintiff Addison P. Cook only held seven-eighths of the original title from the United States. The motion also included one to vacate the judgment, and all proceedings under the execution issued thereon.

July 23, 1886, the court, upon a full hearing from both parties, granted a new trial, but denied the application to set aside the sale to Percy T. Cook under the execution.

September 8, 1886, the Goldsmiths filed a bill in chancery against Addison P. Cook and the relator, alleging, among other things, that the said Percy T. Cook was not a good-faith purchaser at such execution sale, and praying that the certificate of sale to him be canceled and set aside. A subpœna was issued, and afterwards an *alias* subpœna; but no service was ever made upon the relator, who asserts that from that time to this he has had an office in the city of Grand Rapids, and been there almost continuously.

On January 4, 1887, the sheriff, the 15-months' redemption having expired, executed and delivered to the relator his deed of the premises, which on the same day was duly recorded in the register's office.

April 8, 1887, the relator commenced an action of ejectment against the Goldsmiths for the possession of the premises. The Goldsmiths joined issue in the suit, and the cause was duly noticed for trial at the September term, 1887, of the Kent circuit, but was not reached. It was again duly noticed for the December term, 1887.

On October 27, 1887, the affidavit of the officer who made the execution sale was filed in the cause of Addison P. Cook against the Goldsmiths, wherein such officer deposed that the relator, Percy T. Cook, did not pay him any money upon the purchase of the premises, nor did said officer receive any money from any source upon said sale, except the costs of the sale, which were paid by said Addison P. Cook's attorneys, and that he returned the execution at their direction.

On November 3, 1887, a similar affidavit of the same officer was filed; also an affidavit of the attorney for the Goldsmiths, setting forth that the relator was a son of Addison P. Cook, who resides in the county of Jackson, in this State, and that in other suits in the Kent circuit, involving the title of said

Addison P. Cook to other lands belonging to the same tract of land of which these premises are a portion, and during the pendency of the ejectment suit between his father and said Goldsmiths, the said Percy T. Cook was engaged as agent for his father in such other suits upon the same subject-matter, demanding possession, and serving declarations in ejectment, as appears from his testimony in such other suits; and averring his belief, based upon the affidavit of the said officer, that said Percy T. Cook was not a *bona fide* purchaser at the execution sale

Upon these affidavits a motion was made to set aside the execution issued in the suit of Addison P. Cook against said Goldsmiths, and also the execution sale to the relator thereunder.

Notice of said motion was served upon relator, who appeared specially by Edmund D. Barry, his attorney, for the purpose of opposing said motion, and reading and filing an affidavit. The affidavit, being that of the relator, stated that the relator purchased the premises at such sale in good faith and for his own benefit, and for no other person, and that he paid for said property the amount in full bid by him at such sale, and set forth the receiving of his evidence of title under said sale, and the recording of the same. The motion was thereupon argued and submitted, and on January 17, 1888, the circuit judge entered an order granting said motion, and setting aside and vacating both such execution and the sale to the relator under and by virtue of the same.

The relator in his petition reiterates his good faith in the transaction, and alleges that, at the time of the sale, he had not examined the record of the proceedings had upon the trial of the suit between his father and the Goldsmiths, and did not know in what manner his father's title had been there established, and had no knowledge or information whatsoever of any defect in such title, and did not learn, until a long time after said sale, that it was claimed that there was

an heir of Nathaniel Newberry, Sr., who had not joined in the deed to Nathaniel Newberry, Jr., or that his father's title was thereby affected. He further shows that he moved the court in the same cause, on January 21, 1888, to set aside and vacate the order of January 17, 1888, making a showing before said court of his title under said sale, and his good faith in the purchase of the same, which motion was denied. He asks that this Court shall issue its writ of *mandamus* to the circuit judge commanding him to set aside the said order of January 17, 1888, and thereby restore him to his rights under said execution sale.

The circuit judge returns that he does not know whether the relator paid anything upon said purchase or not; that the new trial granted defendants in Addison P. Cook's suit was not a new trial, under the statute, upon payment of costs, but one granted upon special terms, and upon the ground of newly-discovered evidence.

Such return also recites the fact of an application of Percy T. Cook and Addison P. Cook to this Court for a *mandamus* to set aside said order granting a new trial, upon which application an order was granted to show cause, January 18, 1887, and upon hearing on such order, February 1, 1887, such application was denied.

The return also shows that the first affidavit made by the officer never came to the notice of the circuit judge; and that the affidavit that the relator, during the pendency of the ejectment suit of his father against the Goldsmiths, was acting as agent for his father, was not disputed or denied; and that the circuit judge was fully satisfied that the relator could not be damaged by the setting aside of the sale, for, if he bought with his own means, he has ample remedy against his father for the money paid; that, by the judgment and sale, Addison P. Cook has received an advantage to which he is not entitled, owning only seven-eighths of the title by his own admissions in other cases; while, if the sale is allowed

to stand, the defendants Goldsmith are without remedy, and their right to a new trial, as granted, or under the statute, becomes valueless, and therefore greater injustice would be done by allowing the sale to stand than in setting it aside.

It will be seen that the last motion, and the one that was granted, to set aside the execution sale, was not brought before or entertained by the court until the sheriff's certificate had ripened into a deed, delivered to the purchaser and recorded, because of a failure to redeem the premises within the time prescribed by law, and not until an ejectment suit had been brought by the relator to recover possession.

The inquiry arises whether the rights of a good-faith purchaser at such a sale as this are at all affected by a new trial granted after his purchase has ripened into a title by deed; and, if so, the further question remains, whether his good faith as such purchaser can be inquired into and disposed of in a summary manner by *ex parte* affidavits upon a motion to set aside and vacate the execution sale.

It appears that the motion was made before the ejectment case could have been or was reached upon the September calendar, and the attorneys for the respondent claim that, therefore, there was no improper delay in making said motion; but there is no reason shown why the motion was not made before the deed of the sheriff, January 4, 1887, was executed and delivered to the relator, except that such motion was made and denied at the time of granting the new trial, July 23, 1886, nearly six months before the issuing of the deed; nor does it appear from the record that any attempt has been made since July 23, 1886, to retry the case of Addison P. Cook against the Goldsmiths.

We think the general rule is well settled that the subsequent granting of a new trial, or even the reversal or vacation of a judgment, does not affect the title of a good-faith purchaser at an execution sale. The theory of the law is that a judgment in ordinary cases must be presumed to be correct.

The idea of any mistake or error therein is not to be entertained, and the purchaser is therefore justified in buying on the faith of the presumption that the judgment is good and will stand. *Irwin v. Jeffers,* 3 Ohio St. 389; *Gray v. Brignardello,* 1 Wall. 627, 634; *Fergus v. Woodworth,* 44 Ill. 374; *Goodwin v. Mix,* 38 Id. 115; Ror. Jud. Sales (2d ed.) §§ 132, 1143, 1144; Herm. Ex'ns, § 398, and cases cited; Freem. Ex'ns, § 345, and cases cited.

But the counsel for the respondent claim that this case is not within the ordinary rule, for the reason that, in the action of ejectment under our statute, the losing party is allowed three years in which to move for a new trial, and which is granted as a matter of right upon such motion (How. Stat. § 7822); that in the present case said statutory period of three years had not elapsed at the time of granting the new trial, nor until after the motion to set aside the sale. Judgment was rendered November 29, 1884. The sale was set aside January 17, 1888, but the motion was entered November 3, and heard November 14, 1887.

That the relator must be presumed to have known the law, and therefore could not be a purchaser upon the good-faith idea that the judgment must be presumed valid and forever to stand, but that he took his title with notice that the judgment, as a matter of right, could be vacated, at the option of the defendants, at any time within three years after its rendition. He therefore purchased at his peril, and took his chance of a new trial, which might operate to entirely defeat his purchase.

If this contention be correct, it will not be necessary to decide how far the circuit judge could go in determining, upon motion, the good faith of the relator's purchase.

It is argued, upon the part of the relator that, if this rule is to prevail, no one will be safe in purchasing in ejectment cases at an execution sale had within three years after the judgment, thus practically preventing competition at such

sales; and that, in any event, the defendant ought to have moved for such statutory new trial before the period for redemption had expired; and that there is no presumption that the judgment upon the first trial in ejectment is erroneous because subsequent trials are allowed.

I am inclined to the view entertained by the counsel for the respondent, and also think that the defendants Goldsmith were entitled to the full three years given them by the statute. To hold otherwise would in this case, and in all similar cases, cut off and defeat the express provisions of the statute.

If this sale to the relator is to stand unless he can be shown not to have purchased in good faith, then the right of the Goldsmiths to a new trial is denied, and the statute nullified. The land is lost to them without another opportunity to determine their right to it,—an opportunity which the statute has expressly given them if exercised within three years from the first judgment against them. I do not think the presumption of law, heretofore referred to, that the judgment is correct, and must forever stand, can prevail against the express command of the statute that it shall not stand, but shall be vacated, as a matter of course, upon the motion of the losing party in the suit. The statute must control and overthrow the presumption.

The relator, therefore, not being under the law a good-faith purchaser, his purchase upon the execution sale must stand or fall with the judgment upon which the execution was based.

The writ will therefore be denied, with costs.

SHERWOOD, C. J., CHAMPLIN and LONG, JJ., concurred. CAMPBELL, J., did not sit.