106   305
139   ³263

106   305
141   ⁶628

⟨106   305
145   ⁶301
145   ⁶374

## FULLER *v.* SWENSBERG.

1. POSSESSION OF LAND—COLOR OF TITLE.

    An occupant's possession of land is coextensive with his claim
    and color of title. If in possession of a part under color of
    title to the whole tract, his constructive possession extends
    to the whole.

2. TENANCY IN COMMON—CONVEYANCE OF SPECIFIC PARCEL BY
    ONE TENANT.

    Where a city lot owned by tenants in common is divided
    by a street into two separate and distinct parcels, a convey-
    ance of one of such parcels to a stranger by one of the ten-
    ants is not inoperative, within the rule relating to conveyances
    by a cotenant of specific parts of the common property.

3. ADVERSE POSSESSION—TENANCY IN COMMON—OUSTER—EVIDENCE.

    Any acts by a tenant in common in possession, equivalent to
    a denial of the rights of his cotenant, are sufficient to set the
    statute of limitations in motion as against the latter. The
    ouster need not necessarily be founded upon a deed as-
    suming to convey an entirety.

4. SAME—QUITCLAIM DEED.

    An ouster of a tenant in common may be predicated upon a
    quitclaim deed from a cotenant purporting to convey the en-
    tire interest, as well as upon a deed with covenants of war-
    ranty.

5. SAME.

    Where the grantee in a deed from a tenant in common pur-
    porting to convey the entire estate enters into possession of
    the land, such deed is evidence of the extent of his claim and
    of the character of his entry and possession. Whether an
    entry by virtue of such a conveyance of itself operates as a
    disseisin of the cotenant, or whether notice or knowledge of
    the adverse claim must first be brought home to him, is,
    perhaps, open to question; but, in any event, actual notice
    need not be shown.

6. SAME.

    A tenant in common executed a quitclaim deed purporting
    to convey the entire estate. The grantee entered into posses-
    sion, claiming to own the whole property, and he and his
    grantees maintained an actual, continuous, and exclusive

possession thereof for 28 years, improving the premises, paying the taxes assessed thereon, and successively conveying the entire interest by warranty deed. The owners of the remaining interest resided in the immediate neighborhood during the greater portion of such period of occupancy. *Held,* upon a bill for partition filed by the latter, that an absolute title by adverse possession had been established in the defendants.

Appeal from Kent; Adsit, J. Submitted April 19, 1895. Decided September 26, 1895.

Bill for partition by Philo C. Fuller and another against Conrad G. Swensberg and others. From a decree dismissing the bill as to a part of the lands, complainants appeal. Affirmed.

*Sweet, Perkins & Judkins,* for complainants:

Ouster, as against a cotenant, must be shown by acts which amount to a disavowal of the relation of cotenancy; and the usurping possession must be so adverse in its character, so open, notorious, continuous, exclusive, visible, and distinct, as to convey notice of an intention to acquire title as against him. *Dubois* v. *Campau,* 28 Mich. 315; *Campau* v. *Campau,* 44 Mich. 34, 45 Mich. 368; *Highstone* v. *Burdette,* 54 Mich. 332, 61 Mich. 56; *Cook* v. *Clinton,* 64 Mich. 313; *Fenton* v. *Miller,* 94 Mich. 215; *Pierson* v. *Conley,* 95 Mich. 619; *Watkins* v. *Green,* 101 Mich. 493.

Actual notice of the adverse occupancy must be given, or, in its absence, there must be such acts of exclusive ownership, unequivocal, overt, and notorious, as of themselves to import notice of their hostile character to the other cotenants. *Northrop* v. *Marquam,* 16 Or. 173, and cases there cited; *Chandler* v. *Ricker,* 49 Vt. 128; *Gannaway* v. *Tarpley,* 1 Coldw. 572; *Greer* v. *Tripp,* 56 Cal. 209; *Packard* v. *Johnson,* 57 Cal. 180; *Warfield* v. *Lindell,* 38 Mo. 581; *Wommack* v. *Whitmore,* 58 Mo. 448; *Cocks* v. *Simmons,* 55 Ark. 104; *Squires* v. *Clark,* 17 Kan. 84; *Barret* v. *Coburn,* 3 Metc. (Ky.) 513; *Ball* v. *Palmer,* 81 Ill. 370; *Forward* v. *Deetz,* 32 Pa. St. 72; *Berg* v. *McLafferty,* 12 Atl. Rep. (Pa ) 460; *Adam* v. *Ames Iron Co.,* 24 Conn. 235; *Day* v. *Davis,* 64 Miss. 253; *Prescott*

v. *Nevers,* 4 Mason, 330; *Thornton* v. *York Bank,* 45 Me. 161; *Baily* v. *Trammell,* 27 Tex. 328; *McClaskey* v. *Barr,* 47 Fed. Rep. 154; *Fry* v. *Payne,* 82 Va. 759; *Burns* v. *Byrne,* 45 Iowa, 287; *Stewart* v. *Stewart,* 83 Wis. 364.

There can be no ouster under a quitclaim deed. *Woods* v. *Banks,* 14 N. H. 111; *Hume* v. *Long,* 53 Iowa, 299; *Packard* v. *Johnson,* 57 Cal. 180.

A quitclaim deed is not constructive notice. Wade, Notice, § 204, and cases cited; *Peters* v. *Cartier,* 80 Mich. 129, and cases cited.

A conveyance by one joint tenant or a tenant in common of a specific part of the common property to a stranger can have no legal effect, or operate to the prejudice of a cotenant. *Porter* v. *Hill,* 9 Mass. 34; *Bartlet* v. *Harlow,* 12 Mass. 348; *Griswold* v. *Johnson,* 5 Conn. 363; *Hartford, etc., Co.* v. *Miller,* 41 Conn. 112; *Marsh* v. *Holley,* 42 Conn. 453; *Duncan* v. *Sylvester,* 24 Me. 482; *Jewett* v. *Stockton,* 3 Yerg. 492; *Jeffers* v. *Radcliff,* 10 N. H. 242; *Whitton* v. *Whitton,* 38 N. H. 127; *Ballou* v. *Hale,* 47 N. H. 347; *Holcomb* v. *Coryell,* 11 N. J. Eq. 548; *Boston, etc., Co.* v. *Condit,* 19 N. J. Eq. 394; *Stark* v. *Barrett,* 15 Cal. 361; *Gates* v. *Salmon,* 35 Cal. 576; *McKey* v. *Welch,* 22 Tex. 390; *Good* v. *Coombs,* 28 Tex. 34; *Mattox* v. *Hightshue,* 39 Ind. 95; *Shepardson* v. *Rowland,* 28 Wis. 108; *Markoe* v. *Wakeman,* '107 Ill. 251; *Holt* v. *Robertson,* 1 McMul. Eq. 474.

Where there is a privity of estate between the parties, payment of taxes by one is entirely unimportant, unless knowledge of that fact is brought home to the cotenant. *McQuiddy* v. *Ware,* 67 Mo. 74; *McClaskey* v. *Barr,* 42 Fed. Rep. 614, 47 Fed. Rep. 161.

*Myron H. Walker (Taggart, Wolcott & Ganson,* of counsel), for defendants:

An entry under a conveyance which purports to convey the entirety is equivalent to an express declaration on the part of the grantee that he enters claiming the whole to himself, and is such a disseisin as sets the statute of limitations in motion in favor of the grantee. Freem. Coten. § 224, and cases cited; 11 Am. & Eng. Enc. Law, 1114, and cases cited; *Ricker* v. *Butler,* 45 Minn. 545; *Kinney* v. *Slattery,* 51 Iowa, 354; *Watkins* v. *Green,* 101 Mich. 493; *Foulke* v. *Bond,* 41 N. J. Law, 538; *Wright* v. *Kleyla,* 104 Ind. 223; *Bath* v. *Valdez,* 70 Cal. 350. And it is immaterial that the deed is a quit-

claim only. *Horne* v. *Howell*, **46** Ga. 13; *Higbee* v. *Rice*, 5 Mass. 344; *Unger* v. *Mooney*, 63 Cal. 586. But, whatever effect an entry and possession under a quitclaim deed may have, it is clear that in this case there has been an actual ouster, under all the authorities, and an adverse possession that has ripened into title. From 1868 down to the date of this suit, in 1891, all entries have been made and possession has been held by defendants and their grantors under and by virtue of full covenant warranty deeds, duly recorded, purporting to convey the complete and absolute title to the whole premises; and the possession held thereunder has been actual, continuous, and adverse for more than 23 years before suit brought. *Dubois* v. *Campau*, 28 Mich. 304; *Highstone* v. *Burdette*, 54 Mich. 329, 61 Mich. 59; *Watkins* v. *Green*, 101 Mich. 493; and cases previously cited.

In any event, the quitclaim deed from Ball to Latimer constituted color of title (3 Washb. Real Prop. [5th Ed.] p. 167; Sedg. & Wait, Tr. Title Land, § 780; *Hoffman* v. *Harrington*, 28 Mich. 90; *Miller* v. *Clark*, 56 Mich. 337; *Hecock* v. *Van Dusen*, 80 Mich. 359; *Wright* v. *Mattison*, 18 How. 56; *Hall* v. *Law*, 102 U. S. 466; *McCamy* v. *Higdon*, 50 Ga. 629; *Castleberry* v. *Black*, 58 Ga. 386; *Veal* v. *Robinson*, 70 Ga. 809; *Minot* v. *Brooks*, 16 N. H. 376; *Wells* v. *Iron Co.*, 47 N. H. 253; *Cowly* v. *Monson*, 10 Biss. 182; *Parker* v. *Newberry*, 83 Tex. 428), and as such characterized the entry made under it as adverse, and raised the presumption that the claim of title was coextensive with the conveyance (Sedg. & Wait, Tr. Title Land, § 763; 1 Am. & Eng. Enc. Law, 234; *Murray* v. *Hudson*, 65 Mich. 670; *Humbert* v. *Trinity Church*, 24 Wend. 604; *Pillow* v. *Roberts*, 13 How. 477; *King* v. *Carmichael*, 136 Ind. 20; *Gregory* v. *Gregory*, 102 Cal. 50; *VanGunden* v. *Iron Co.*, 52 Fed. Rep. 838; *Rutter* v. *Small*, 68 Md. 133; *Forest* v. *Jackson*, 56 N. H. 357).

Defendants' title by adverse possession is complete, independent of conveyances of record or color of title. Wood, Lim. § 266; Freem. Coten. §§ 228, 229; 11 Am. & Eng. Enc. Law, 1115-1117; *Dubois* v. *Campau*, 28 Mich. 304; *Littlejohn* v. *Barnes*, 138 Ill. 478; *Laraway* v. *Larue*, 63 Iowa, 411; *Knowles* v. *Brown*, 69 Iowa, 13; *Robidoux* v. *Cassilegi*, 10 Mo. App. 516; *Rickard* v. *Rickard*, 13 Pick. 251; *Lefavour* v. *Homan*, 3 Allen, 354; *Bennett* v. *Clemence*, 6 Allen, 10; *Burns* v. *Headerick*, 85 Tenn. 102; *Henning* v. *Warner*, 109 N. C. 406; *Johnson* v. *Toulmin*,

18 Ala. 50; *Bolton* v. *Hamilton*, 2 Watts & S. 294; *Fishar* v. *Prosser*, 1 Cowp. 217.

Actual notice or knowledge of ouster or adverse possession need not be brought home to the cotenant. Freem. Coten. § 230; *Dubois* v. *Campau*, 28 Mich. 304; *Highstone* v. *Burdette*, 54 Mich. 329; *Cook* v. *Clinton*, 64 Mich. 314; *Lodge* v. *Patterson*, 3 Watts, 77; *Law* v. *Patterson*, 1 Watts & S. 191; *Warfield* v. *Lindell*, 30 Mo. 282, 38 Mo. 578; *Lapeyre* v. *Paul*, 47 Mo. 590; *Baldwin* v. *Ratcliff*, 125 Ill. 376; *Littlejohn* v. *Barnes*, 138 Ill. 478; *Laraway* v. *Larue*, 63 Iowa, 407; *Knowles* v. *Brown*, 69 Iowa, 13; *Greenhill* v. *Biggs*, 85 Ky. 155; *Frick* v. *Sinon*, 75 Cal. 337; *Oglesby* v. *Hollister*, 76 Cal. 136; *Winterburn* v. *Chambers*, 91 Cal. 170; *Van Gunden* v. *Iron Co.*, 52 Fed. Rep. 838; *Alexander* v. *Kennedy*, 19 Tex. 488; *Hicks* v. *Bullock*, 96 N. C. 164; *Rutter* v. *Small*, 68 Md. 133.

McGRATH, C. J.    This is a bill, filed in 1891, for partition of two portions of mill lot D in the city of Grand Rapids. The following sketch of a part of the Kent plat will aid in an understanding of the situation:

The westerly terminus of Bridge street, as dedicated, was Canal street. The "Bridge Street Bridge," so called, was constructed in 1852 by a private corporation. Its approach was upon lot D, under a lease from the owners of that lot. The grant was of a parcel 66 feet in width, but the bridge itself was from 33 to 38 feet in width. The city afterwards acquired all interest in the bridge. In 1872 or 1873, an abutment was erected at a point on a line with the west wall of the flouring mill hereinafter referred to. Since the city acquired title, the bridge has

been widened. The land in controversy consists of a strip about 16 feet wide at the canal and 9 feet wide at the dock line. It is conceded that complainants and defendants are owners as tenants in common of that portion of lot D lying south of the bridge, but defendants claim title to the strip lying north of the north line of the bridge by adverse possession since 1863.

In 1863, Daniel Ball and Charles H. Carroll were owners in common of said lot D. Ball was the owner of lot C, and in February, 1863, he conveyed by quitclaim deed to one Latimer "all of those portions of lots C and D, Kent plat, lying north of and adjoining the so-called 'Bridge Street Bridge,' and south of the so-called 'Old Salt Well Lot,' * * * excepting and reserving all riparian rights in Grand river, or in the bed thereof, lying west of and adjacent to said premises." In February, 1864, Ball conveyed by warranty deed to one Nichols "all of his right, title, and interest" in lot D, warranting and defending the same, "except the right to draw water and the water rights and riparian rights in and to the bed of Grand river." Latimer, in 1863 and 1864, by separate deeds, conveyed to each of the following named persons, George H. White, John B. Moon, A. W. Pelton, and John Mangold, " an undivided one-fourth of all of lot D lying north of Bridge street bridge," and other lands. The deed to White was a warranty; the other three deeds excepted lot D from the warranty. Each of these deeds contained the following: "It is intended by this deed to convey one-fourth of all of the lots, pieces, and parcels of land described in and conveyed by a deed," and then follows an enumeration of five deeds, one of which is the deed from Ball to Latimer. White, in 1866, conveyed by quitclaim deed to Moon, and Pelton, in 1864, conveyed by warranty deed to Mangold. Mangold and Moon, in 1867, by warranty deed, conveyed the undivided one-third to Cary and Collins. In 1868, Mangold, by warranty deed, conveyed an undivided one-third to Cary and Collins. In 1871, Cary and Collins conveyed

by warranty deed an undivided one-sixth to Barnes. Moon died testate in 1869. Under his will, Mary Moon took an undivided one-sixth, Lillie E. Mangold an undivided one-twelfth, and Georgiana Moon an undivided one-twelfth. Collins, in 1872, conveyed to Cary by warranty deed an undivided one-fourth. Cary, in 1875, conveyed by warranty deed an undivided one-sixth to Barnes. So that in 1875 Mary (Moon) Shriver owned an undivided one-sixth, Lillie E. (Mangold) Manley an undivided one-twelfth, Georgiana Moon an undivided one-twelfth, Jacob Barnes an undivided one-third, and A. X. Cary an undivided one-third. In 1884, Shriver, Manley, and Moon conveyed by warranty deed their undivided one-third to defendants, and Barnes and Cary in the same year, by circuit court commissioner's deed, conveyed their undivided two-thirds to the Grand Rapids Savings Bank, which bank conveyed by warranty deed to defendants. Isaac Nichols, in 1867, quitclaimed the undivided one-fourth of lot D to Naysmith. Naysmith, in 1873, quitclaimed the undivided one-half of lot D south of Bridge street to Sarah Nichols, and in 1888 the title to this undivided half of that portion of lot D lying south of Bridge street reached defendants. Complainants trace their title to the undivided one-half of the entire lot from Carroll. Their immediate grantor was Cornelia G. Fuller, who acquired her title in 1869, at which time she was a resident of Grand Rapids, and has since continued to reside in that city. Complainants acquired their title in 1879, at which time they were residents of Grand Rapids, and have since continued to reside there.

It is clear from this record that in 1862 and 1863 a flouring mill, to be operated by water power, was built upon lot C, and the same has been operated continuously since that time; that the south-east corner of the mill was less than 15 feet north of the north line of lot D; that the chute into which the grain was delivered to the mill was located on the southerly side of the mill; that the office was located in the south-west corner of the mill; that as

early as 1873 a brick office, two stories above ground, having a south frontage of 20 feet, and connecting with the mill, was built at the south-west corner of the mill; that the front of this office encroached upon the 66 feet devoted to bridge purposes; that the abutments of the present bridge were constructed in 1872 or 1873, and the footings thereto extended north of the north line of the 66 feet aforesaid; that when the bridge was widened, and when these abutments were constructed, the consent of defendants' grantors was first obtained; that when the mill was built the space between the mill and the roadway was partially filled in by defendants' grantors, and when the office was built further filling was done, and for a number of years prior to the commencement of these proceedings the whole space had been filled in to a level with the bridge floor; that when the mill was built a plank way was constructed from the bridge at a point directly south of the office to the mill, and along the south side of the mill; that said planking extended south so as to cover all of the strip in controversy; that the entire portion of lot D in question has been since 1863 used in connection with the operation of said mill, and as an approach thereto; that in said space lumber has been piled, wagons have been stored, and teams hitched from time to time during the entire period; that defendants and their grantors have from time to time excluded other persons from said premises; that since 1863 the taxes upon "all of lot C lying four feet south of flouring mill and all of lot D lying north of Bridge street" have been assessed to and paid by defendants or their grantors; that during the same period the taxes upon one undivided half of that portion of lot D lying south of the bridge have been assessed to and paid by complainants or their grantors, and the taxes upon the other undivided half have been assessed to and paid by defendants or their grantors; that the insurance upon the office building has been always taken out in the name of defendants or their grantors; that from and including Latimer all of the

grantees of undivided parts of the land in question were, during their holdings, interested in operating the flouring mill aforesaid; that defendants and their grantors, since the conveyance from Ball, have entered into possession of said premises, and occupied the same, claiming to own the entire interest in the said land in dispute.

The rules respecting the acquisition of title by adverse possession as against a cotenant have been fully discussed by this court in numerous cases. *Dubois* v. *Campau*, 28 Mich. 304; *Campau* v. *Dubois*, 39 Mich. 274; *Sands* v. *Davis*, 40 Mich. 14; *Campau* v. *Campau*, 44 Mich. 34, 45 Mich. 368; *Highstone* v. *Burdette*, 54 Mich. 332, 61 Mich. 56; *Cook* v. *Clinton*, 64 Mich. 313; *Fenton* v. *Miller*, 94 Mich. 215; *Pierson* v. *Conley*, 95 Mich. 619; *Watkins* v. *Green*, 101 Mich. 493.

In *Dubois* v. *Campau*, 28 Mich. 304, the record was silent as to any acts or declarations accompanying the entry. The trial court instructed the jury that—

"If they found that Joseph Campau had occupied the property for more than 20 years, without any claim by the plaintiffs or their ancestors to a share of the rents and profits, and without actual acknowledgment of the rights of the plaintiffs or their ancestors, and with the knowledge of the latter, then they are well warranted in presuming anything in support of defendants' title, and they may presume either an actual ouster of the plaintiffs and their ancestors by Joseph Campau, or a conveyance by them to Joseph Campau. Joseph Campau being in possession, he and his heirs are presumed to have had a good title, and the burden of proof is upon the plaintiffs to show title in themselves."

This instruction was approved, and the judgment affirmed. Mr. Justice CAMPBELL, with whom Mr. Justice GRAVES concurred, held that upon such facts the inference or presumption of title was one of law, while Mr. Justice CHRISTIANCY held it to be one of fact for the jury. Mr. Justice COOLEY concurred with Mr. Justice CHRISTIANCY, but assented to the affirmance of the judgment upon the ground that under any charge that could have

been properly given in the case the jury should have re-
turned the verdict which they did, and that any different
verdict should have been set aside as unwarranted.

In *Campau* v. *Dubois,*—

"Where one of several heirs had taken exclusive pos-
session of land to which all were entitled as tenants in
common, and had improved it without interference from
the others, though they lived in the immediate neighbor-
hood, and no possessory action was brought by them, or
by their heirs or representatives for more than 25 years
after their death, it was *held* that no possession could
properly be found that was not adverse and exclusive
within the statutory period of limitation, and that there
could be no recovery in the right of the excluded parties."

In *Sands* v. *Davis,* Sands entered under a quitclaim
deed from Filer, claiming the entire title, and it was held
that he owed no duty to the other tenants. In *Highstone*
v. *Burdette* the court would seem to have observed the
rule as contended for by Mr. Justice CHRISTIANCY in *Du-
bois* v. *Campau.*

The present case is here on appeal from a chancery de-
cree. Here there was an entry under a deed which pur-
ported to convey the entire estate. The deed is supple-
mented by testimony clearly tending to show that the
entry was under a claim of ownership of the whole prop-
erty; that defendants' grantors bought, and intended to
buy, the entire interest; that this claim of ouster and ad-
verse possession had been consistently maintained from
1863 to the commencement of this suit; that until 1884
neither complainants nor their grantors ever asserted
any claim to any interest in the premises, and after that
time seven years elapsed before any proceedings were in-
stituted; that prior to 1876,—a date beyond the statutory
period,—not only had Latimer entered, but White, Moon,
Pelton, and Mangold entered; Pelton and White retired;
Cary and Collins and Barnes acquired interests and en-
tered upon the premises; and all these parties entered
under conveyances giving them, with the parties in
actual possession, the entire estate. The *quo animo* of the

original entry and of these subsequent entries does not depend alone upon the conveyances. The fact is not disputed.

Complainants insist that a quitclaim deed cannot operate as an ouster, citing *Woods* v. *Banks,* 14 N. H. 111; *Hume* v. *Long,* 53 Iowa, 299; and *Packard* v. *Johnson,* 57 Cal. 180. In each of these cases, however, the conveyance was simply of all the grantor's right, title, and interest, and it was held that a deed could not be even color of title beyond what it purports to convey; that these deeds were merely releases of the interest of the grantors; and that no ouster of the true owner would arise. An ouster need not necessarily be predicated upon a deed from a cotenant. One cotenant may oust another in the absence of any conveyance except that which creates the cotenancy. The ouster must, in such case, arise from other acts. Defendants must show acts equivalent to a denial of the rights of the cotenants. The deed is evidence of a claim to the entire premises, of the character of the entry, and of the possession under it. It cannot be said to be any the less notice because not a warranty. Conceding that the receipt of a quitclaim deed puts the grantee upon inquiry, it does not follow that defendants' grantors did make inquiry, or that they did not rely upon the deed as a conveyance of the entire estate, or that they did not intend to claim title to the whole. If the question of good faith should be considered, it is to be determined from all the facts. There is nothing in this record upon which an inference of bad faith may be predicated.

Many of the authorities hold that an entry under a conveyance which purports to convey the entirety is equivalent to an express declaration on the part of the grantee that he enters claiming the whole to himself, and is such a disseisin as sets the statute in motion in favor of the grantee. Freem. Coten. § 224; 11 Am. & Eng. Enc. Law, 1114. Other authorities hold that the statute does not begin to run until the cotenant has had notice or knowledge of the ouster. 3 Shars. & B. Lead. Cas. Real Prop.

121. But it is not necessary that actual notice be shown or brought home to the cotenant. It is said in *Packard* v. *Johnson*, 57 Cal. 180, that plaintiff was ousted from the point of time when he became aware of such claim, or (at the very least) from the time when, as a prudent man, reasonably attentive to his own interests, he ought to have known that his cotenant asserted an exclusive right to the land. Whichever rule is applied, the full statutory period has run against complainants, for it must be conceded that before the expiration of the 15 years a prudent man, reasonably attentive to his own interests, ought to have discovered that defendants' grantors had asserted an exclusive right to this parcel of land.

The facts of this case bring it clearly within the rule contended for by Mr. Justice CHRISTIANCY in *Dubois* v. *Campau.* The original entry is shown to have been adverse. The intent with which the entry was made is shown as a matter of fact. The delay or acquiesence has been for 13 years more than that required by the statute of limitations. The cases of *Cummings* v. *Wyman*, 10 Mass. 464, and *Rickard* v. *Rickard*, 13 Pick. 251, are cited in that case by Mr. Justice CAMPBELL. Both were partition cases. Mr. Justice CHRISTIANCY, in commenting upon them, says:

"The court considered the case [*Cummings* v. *Wyman*] upon the evidence returned, and confirmed the finding. * * * The evidence was direct and positive of facts which of themselves constituted an actual ouster long prior to the statute period, and shows affirmatively that the possession was adverse, and there was no evidence of an opposite tendency. And the remark of the court that if the case had been submitted to a jury, and they had found the other way, the verdict would have been set aside (though unnecessary, and by way of illustration), was well founded. But, an actual ouster and adverse possession being affirmatively shown by direct evidence, without any evidence to the contrary, there was no room for and no need of any presumption; and all that is said upon that point is a mere *dictum.* The court, however,

expressly treats the presumption as one of fact, not of law, so that the case as well as the *dictum* is directly opposed to the doctrine for which it is cited here. *Rickard* v. *Rickard* also expressly holds the presumption to be one of fact, to be found by the jury from the evidence. But it is remarked: 'It is well settled that a long, exclusive, and uninterrupted possession by one, without any possession or claim of profits by the other, is evidence from which a jury may and ought to infer an actual ouster.' The case was a petition for a partition, where the court, like a jury, considered it upon the weight of the evidence, and found, as any sensible jury must have found from so long a period of exclusive possession under a claim of the whole title (which was there shown), that the possession was adverse.' And if a jury in such a case, and upon such evidence, had found otherwise, I should have held without hesitation that the verdict ought to be set aside as against evidence."

It is urged that a conveyance by a tenant in common of a specific part of the common property to a stranger can have no legal effect, or operate to the prejudice of a cotenant. That rule has no application to the situation here. The conveyance here did not attempt to carve out a specific parcel from a larger parcel. The bill alleges that lot D had been divided into two separate and distinct parcels, one lying north and the other south of Bridge street.

There was some testimony tending to show that this strip of land was used by persons other than defendants, to gain access to mills located north of the mill operated by defendants. But the question is an open one, upon this record, as to whether, according to the original dedication, Mill street did not extend to the south line of lot C, and whether a right of way has not been acquired by prescription along the line of Mill street extended; but a determination of those questions is unnecessary. It is clear that any use of this strip west of Mill street, at least, by persons other than defendants and the persons having business with them, has been a permissive use, and in recognition of defendants' claim of owner-

ship. There can be no question concerning defendants' possession. The office built by defendants' grantors in 1873 encroached upon the 66 feet granted to the bridge company. It was held in *Campau* v. *Campau, supra,* that the possession of an occupant is coextensive with his claim and color of title. If in possession of a part under color of title to the whole tract, his constructive possession extends to the whole. There is no question but that the possession of the office was notorious and exclusive.

The decree is affirmed, with costs to defendants.

The other Justices concurred.