D. & W. ROTTSCHAFER, INC., *v.* CITY OF GRAND RAPIDS.

1. EJECTMENT—TITLE—TAX SALE—NOTICE OF RECONVEYANCE.
   Plaintiff, transferee of former owners of 18 lots in a tract of land sold to city at tax sale, was barred from asserting title in action of ejectment, where evidence does not support plaintiff's contention that city had failed to give a proper notice of reconveyance after receiving tax deed.

2. SAME—DEFENSE OF ESTOPPEL.
   The defense of estoppel is available in an action of ejectment.

3. SAME—TAX DEEDS—ESTOPPEL.
   Plaintiff, as transferee of grantors who had knowledge of city's claim of ownership of property in question through tax deeds for a period of more than 15 years, is estopped in ejectment action from questioning the validity of the tax sale, especially where city has not recognized any others as having title during such period (CL 1948, § 609.1).

Appeal from the Superior Court of Grand Rapids; Taylor (Thaddeus B.), J.    Submitted June 7, 1956. (Docket No. 37, Calendar No. 46,452.)    Decided October 1, 1956.

Ejectment by D. & W. Rottschafer, Inc., a Michigan corporation, against the City of Grand Rapids, a municipal corporation, in respect to lots purchased by city on tax sale.    Declaration dismissed.    Plaintiff appeals.    Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[2, 3]  18 Am Jur, Ejectment §§ 60, 61.

*Kingston & Porter,* for plaintiff.

*George R. Cook,* City Attorney, and *Claude Vander Ploeg,* Deputy City Attorney, for defendant.

KELLY, J. Plaintiff filed its declaration on January 13, 1953, alleging that defendant city wrongfully claimed ownership and right of possession to 18 lots in Morgan's Addition to the city of Grand Rapids and demanded judgment for the possession of said lots and damages in the sum of $300.

Defendant answered, stating that it had title by virtue of a tax deed dated January 4, 1932, and a notice by purchaser at tax sale served July 27, 1933, and that since March 15, 1934, defendant city has been in continuous, open and hostile possession.

After hearing testimony and arguments of counsel, the judge of the superior court of Grand Rapids dismissed plaintiff's declaration. Plaintiff appeals.

Defendant city became the owner of these lots in 1899 by virtue of a tax sale and the city quitclaimed these lots to plaintiff's predecessor (D. & W. Rottschafer Real Estate, Inc.) on May 9, 1929, subject to the following provision set forth in said deed:

"Liens derived from assessment rolls and sidewalk and nuisance rolls in the hands of the city treasurer for collection; also liens from unpaid assessments returned to the city treasurer and held by him for collection or sale of property, excepted."

The lots in question were sold to defendant city at tax sales held in 1930, 1931, 1932 and 1933, for failure to pay State and county taxes.

The city commission in 1934 removed these lots from the tax roll, declaring they should be held for public purpose until sold, and thereafter no city, school, or county taxes were levied on the lots.

The vice-president, and also the treasurer, of plaintiff corporation testified, and the record estab-

lishes, that they were aware from 1932 to 1952 that the city claimed ownership and title to these lots. In 1952 the vice-president, William Rottschafer, sought the aid of the plaintiff's attorney and informed the attorney that when the scavenger sale was held in 1939 plaintiff corporation, through his efforts, contacted the city in regard to these lots and was informed by the city that it was not going to relinquish title to the lots; that it was not going to place same on the scavenger list, and that it would continue to hold title and ownership in said lots.

In regard to this 1952 conference, the attorney testified:

"He (William Rottschafer) went on to say that the city had made no public use of it for approximately 10 years or more and that he thought it was time that they had an opportunity to get the property back, and he told me to take the necessary steps to get the property back from the city."

On October 10, 1952, William O. Rottschafer, Dick Rottschafer, Henry O. Rottschafer and Peter W. Rottschafer, as the surviving members of D. & W. Rottschafer Real Estate, Inc., conveyed to D. & W. Rottschafer, Inc., the present plaintiff, lots 5 and 6 and 8 to 23, inclusive, of the lands described.

Lots 74 to 77 were included in the lots obtained by the city through the tax deed in 1932. Plaintiff, in its present action, is not claiming the right to title of lots 74 to 77, thereby recognizing the city's right in 1941 and 1946 to convey lots 74 to 77 to other parties; and, the fact that plaintiff corporation was advised of such sale and made no objection to the city's right to sell same is evidenced by the following testimony of plaintiff's vice-president, William O. Rottschafer:

"I know that the city conveyed lots 74 through 77 to 2 other persons not involved in this lawsuit. These purchasers applied to our corporation for quitclaim deeds. I don't know how much they paid."

Further proof that plaintiff corporation acknowledged defendant as title owner of the lots deeded to defendant in the tax deed of 1932 is evidenced by a purchase made in 1941 of 3 of the lots deeded the city in 1932. This purchase was made by the Standard Supply & Lumber Company. The directors of plaintiff corporation are also officers and directors of the Standard Supply & Lumber Company.

That officers of plaintiff corporation were men of extensive experience in the purchasing, sale and ownership of property is disclosed by vice-president Rottschafer's testimony, as follows:

"In the past I was an officer of D. & W. Rottschafer Real Estate, Inc. I am now an officer in D. & W. Rottschafer, Inc., a partner in Silver Creek Land & Investment Company and an officer in Standard Supply & Lumber Co. In the course of our business, we purchase and hold property for future development. We have purchased numerous tax titles in the past. We hold property for speculation as well as development."

The further testimony of Mr. Rottschafer discloses that the lots in question were in close proximity to the offices of the plaintiff corporation:

"*Q.* Could you describe with reference to the location of these lots on Eastern avenue where your real-estate office is located? How much distance separates your real-estate office from these lots?

"*A.* A quarter of a mile.

"*Q.* It is the same general section of 2, too, isn't it?

"*A.* Yes.

"*Q.* Do you have occasion to drive on Eastern avenue very often?

"*A.* Yes."

The defendant city introduced proof of continuous, open and hostile possession, adverse to the rights or title asserted by plaintiff, and that since March

15, 1934, the city has filled, leveled and graded the premises and licensed the use thereof as a recreation field and has leased the property for other purposes.

Plaintiff, in its brief, admits that the city between 1929 and 1941 used the premises as a dumping ground; that in 1948 the city gave permission to an American Legion organization to use the premises and that the Legion, pursuant to such permission, did some clearing and leveling of the lots; also, that in 1949 the city gave permission to a golf driving range operator to use the premises, and said operator, pursuant to permission, did further clearing and leveling of the premises. Plaintiff contends that this proof does not meet the test required for adverse possession, but it is significant that plaintiff corporation, officered by men of extensive experience in real-estate transactions, did not make objections to the city's leasing of the property in question in 1948 and 1949.

This opinion affirming the decision and opinion of the lower court is not based on the question of adverse and hostile possession, and, therefore, there will be no further discussion of that testimony in this opinion.

Plaintiff contends in its brief that assuming defendant city did prove a valid tax deed to the premises, it nevertheless failed to give a proper notice of reconveyance, and, therefore, is forever barred from asserting title.

The proof in this case establishes the fact that in 1933 the defendant city prepared a notice of reconveyance directed to D. & W. Rottschafer, 1535 Kalamazoo, which was the listed address of the D. & W. Rottschafer Real Estate, Inc.; that the notice by the purchaser, defendant city, under the tax sale was returned on September 1, 1933, and recorded in liber 68 of miscellaneous records, page 137, on March 15, 1934. The deputy who served the notice testified that

because of the length of time that had expired, of 20 years, he could not remember the details of the service but he identified his signature on the return and stated that because of the fact that his signature was on the return he felt confident that he had made the service.

This Court had occasion to comment upon testimony of a service made 10 years before the witness who made service testified, and in that opinion we stated:

"It is further sought to impeach the service of the notice by the testimony of Mr. Hebinger, who testified that it was never served upon him. It is urged that this testimony, taken in connection with the somewhat doubtful tone of the undersheriff's testimony on the subject, is convincing that the service was never made. The testimony of the undersheriff was what the testimony of any officer might be, who had served many such notices, after a lapse of 10 years. He testified, in substance, that while he did not remember the particular service, he thought it must have been made in accordance with the facts stated in the return. Upon the whole record, we agree with the chancellor that the return should not be declared invalid for this reason." *P. L. Sherman Co. v. Pearll*, 197 Mich 557, 559, 560.

This record does not support plaintiff's contention that the defendant city failed to give a proper notice of reconveyance, and plaintiff, therefore, is barred from asserting title.

In affirming the trial court we are approving the following statement made by the trial court in the opinion filed on February 2, 1954:

"For more than 15 years the defendant has exercised acts of ownership by virtue of its tax deeds. The present action is barred by CL 1948, § 609.1 (Stat Ann § 27.593). Whether the tax title of the defendant was good or bad, more than 10 years have

elapsed before this action was commenced and the present plaintiffs are estopped from proceeding against the defendant. The defense of estoppel is available in an action of ejectment. *Sliwinski* v. *Gootstein,* 234 Mich 74; *Weber* v. *Ford Motor Co.,* 245 Mich 213.

"Plaintiff's grantors had knowledge for 15 years prior to the date of the deed in which plaintiffs now seek to come in possession of the defendant's claim of title to this land. In such a case the validity of the tax sale cannot now be questioned. *Cook* v. *Clinton,* 64 Mich 309 (8 Am St Rep 816).

"At no time since March of 1934 has the defendant city recognized any others as having title. It is this evidence of intention for more than 15 years prior to this suit that would perfect defendant's title if nothing else. *Smith* v. *Feneley,* 240 Mich 439. Plaintiffs cannot prevail upon this record and judgment will be entered for the defendant."

Judgment affirmed. Costs to appellee.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, BOYLES, CARR, and BLACK, JJ., concurred.