SALADIN, Respondent, vs. KRAAYVANGER and wife, imp., Appellants.

*April 12 — April 30, 1897.*

*Tenants in common: Adverse possession: Fraud in obtaining title: Laches.*

1. A tenant in common in possession who has once acknowledged his cotenant's title cannot claim to hold adversely until he has brought home to his cotenant knowledge of the adverse nature of his holding, unless his exclusive use and enjoyment has been so long continued as to justify a finding of acquiescence on the part of the other tenant.

Saladin vs. Kraayvanger and wife.

2. In an action by one tenant in common against her cotenant to set aside a sale under a foreclosure judgment through which the latter had fraudulently acquired title to the common property, it appeared, among other things, that the parties were brother and sister; that the mortgage had been given by their mother, under whom they claimed, to secure the defendant's individual debt; that to defendant's knowledge plaintiff was an ignorant woman, unfamiliar with business, very poor, deserted by her husband, and living at a great distance; that no direct notice of the foreclosure was ever brought home to the plaintiff, although some mention was made of a sale about to be made; that her name had been intentionally misspelled on the copy of the summons which had been mailed to her; and that she remained in ignorance of the sale until her return, more than ten years after the execution of the deed, when she promptly asserted her rights. *Held*, that the plaintiff was not guilty of such laches as would preclude a recovery.

APPEAL from a judgment of the superior court of Milwaukee county: R. N. AUSTIN, Judge. *Affirmed.*

This is an action in equity to set aside a sale under a foreclosure judgment as a cloud upon title to real estate, and to have an accounting for rents and profits. The answer set up adverse possession and laches. The action was tried before a referee, whose report was confirmed by the court.

Upon the trial the following facts appeared without dispute: On the 15th of July, 1878, the eighty acres of land in question were owned by one Anna Kraayvanger, the mother of the plaintiff and of the defendant *William Kraayvanger*. Upon the date aforesaid, Anna died intestate, leaving four children, her heirs at law, including the plaintiff and the defendant aforesaid. She also owned at the time of her death forty-four acres of land in another place, with some personal property. At the time of her death the eighty acres of land aforesaid, which is in litigation, was subject to a mortgage for $639 to secure a note signed by Anna and her son *William*. At the time of Anna's death the plaintiff was living with her husband, one Casimir Saladin, in the

Saladin vs. Kraayvanger and wife.

city of Pittsburgh, Pennsylvania, and continued to live there until she returned to Milwaukee, in November, 1893, shortly before commencing this suit.   Upon the death of Anna, the defendant *William* went into possession of the eighty acres of land in question, and has remained in possession of the same up to the time of the trial of this action.   In September, 1881, action was commenced to foreclose the said mortgage.   The plaintiff was named as a defendant in that action under the name of "Anna Salontine," and service by mailing was made upon her under that name, but the papers never reached her.   In March, 1882, judgment was taken in the foreclosure action, and in April, 1883, the premises were sold upon the judgment to the brother-in-law of the defendant *William*, who received a sheriff's deed, and paid $921.27 for the same.   In September of the same year, *William* paid his brother-in-law the sum he had advanced to purchase the premises, and the brother-in-law executed a quitclaim deed running to the defendant *William* and *Mary Kraayvanger*, his wife, jointly.   Since receiving this deed, *William* has claimed exclusive ownership of the premises, but never brought home notice of such claim to the plaintiff, and he has also made some improvements upon the premises.   In March, 1879, *William* purchased the interests of his brother John and his sister Mina in the premises, thereby becoming the exclusive owner of an undivided three-fourths thereof. The sheriff's sale under the foreclosure judgment has never been confirmed by the court.   The rental value of the one-fourth of the premises during the time the defendant *William* has been in possession thereof, up to the time of the commencement of the action, was found by the referee to amount to $1,006.85 over and above the proper offsets.

The referee further found upon conflicting evidence the following additional facts: That the entire consideration of the mortgage for $679 was received by the defendant *William*, and his mother was only an accommodation maker

of the note and mortgage; also that the plaintiff had no knowledge of the foreclosure of the mortgage until she returned to Milwaukee, in 1893; also that there was a collusive arrangement between the defendant and his brother-in-law, who purchased the mortgaged premises at the foreclosure sale, by which the brother-in-law was to nominally purchase the same in his own name, but in fact as the agent of *William.*

There was also evidence to the effect that in March, 1883, proceedings were commenced in the court of common pleas in the city of Pittsburgh by Casimir Saladin for the purpose of declaring his wife insane, and that she was adjudged insane on the 21st day of April, 1883, and her husband was appointed her guardian, and that said adjudication of insanity remained unreversed until the 15th of February, 1890, when, upon the plaintiff's petition, she was adjudged sane, and all the proceedings had in 1883 were superseded and determined; further, that during all of the time from April, 1883, until March, 1890, the plaintiff was under disability to transact business, and wholly without means of support, and had an infant daughter, who was crippled and dependent upon her for support; and that as soon as she was able to do so, to wit, in November, 1893, she returned to the city of Milwaukee, and then for the first time became aware of the foreclosure proceedings. This finding with regard to the plaintiff's insanity was based upon an exemplification of the proceedings in the Pennsylvania court. Objection was made to the reception of such exemplification in evidence because the adjudication of insanity was not made until after the date of the foreclosure judgment, but the objection was overruled.

Judgment was rendered setting aside the foreclosure proceedings, and removing the cloud from the plaintiff's title; also for the rents and profits aforesaid; and from this judgment the defendant *William* and *Mary,* his wife, have appealed.

Saladin vs. Kraayvanger and wife.

*Edwin F. J. Goldsmith,* for the appellants.

For the respondent there was a brief by *Rietbrock & Halsey* and *Theo. Otjen,* and oral argument by *L. W. Halsey.*

WINSLOW, J.   It is unnecessary to decide whether the exemplification of the lunacy proceedings in the Pennsylvania court was admissible or not.   The finding of the plaintiff's insanity may be stricken from the case, and still the plaintiff will be entitled to recover upon the other facts found which are founded upon sufficient evidence.   From these findings it appears that in 1883 the defendant *William* and the plaintiff were tenants in common of the farm, he owning three fourths and she one fourth thereof, and he being in possession of the whole, acknowledging her interest.   The whole farm was subject to a mortgage for *William's* individual debt.   Upon the foreclosure of that mortgage no notice of the proceedings was ever given to the plaintiff, and she remained in ignorance of them, without fault on her part, until her return to Milwaukee, in 1893.   *William* procured his brother-in-law to bid in the property at the foreclosure sale for the purpose of cutting off the plaintiff's title, and then paid his brother-in-law the amount advanced, and took a deed of the premises.   *William* remained in possession after the foreclosure the same as before, and gave the plaintiff no notice of any change in the character of his holding, or that he claimed any different or greater interest in the premises than before.

It is very well settled that a tenant in common in possession, who has once acknowledged his cotenant's title, cannot claim to hold adversely until he has brought home to his cotenant knowledge of the adverse nature of his holding, unless his exclusive use and enjoyment has been so long continued as to justify a finding of acquiescence on the part of the other tenants.   *Sydnor v. Palmer,* 29 Wis. 226; *Stewart v. Stewart,* 83 Wis. 364.   We find no such state of facts here. The defense of the statute of limitations therefore cannot

avail the defendants, nor do we think the facts show that the plaintiff was guilty of laches. The plaintiff was an ignorant woman, unfamiliar with business, living at a great distance from the scene of action, and was very poor, with a family to support, and had been deserted by her husband. All of these facts were known to *William.* While there seems to have been some mention made to her of a sale of the premises about to be made, it does not appear that she was notified that her title was in danger by foreclosure, nor did she ever receive a summons or paper of any kind in the foreclosure action. On the other hand, her name seems to have been intentionally spelled wrongly, so as to keep from her all knowledge of the foreclosure. She is not to be judged as a business man would be judged. Considering her situation and circumstances, we do not think she should be charged with laches for not anticipating that her brother would use the machinery of the law to cut off her share in her mother's estate.

These observations dispose of both of the defenses made and necessitate affirmance of the judgment.

*By the Court.*— Judgment affirmed.