JOHN J. COLE, APPELLANT, V. JOHN D. COLE ET AL., APPELLEES.

FILED SEPTEMBER 20, 1915. No. 18244.

1. **Public Lands: HOMESTEAD ENTRY: DEVISE.** Where a homestead entryman dies, testate, prior to having completed the residence required to entitle him to obtain a patent to the land entered upon, leaving no widow, or minor children entitled to claim under section 2292, Rev. St. U. S., his devisee succeeds to his rights as entryman, and, upon completion of the fulfilment of the requirements of the homestead act, becomes the owner of such land and entitled to the patent therefor.

Cole v. Cole.

2. ———: ———: ———: QUIETING TITLE. And, in such case, the
fact that when the devisee applies for a patent he fails to present
the will of the decedent to the land department will not, in the
absence of a plea and proof of facts constituting an estoppel,
defeat his right to have his title quieted in the proper local court.

APPEAL from the district court for Logan county:
HANSON M. GRIMES, JUDGE. *Reversed with directions.*

*Mahoney & Kennedy* and *Yale C. Holland,* for appellant.

*R. S. Norval, contra.*

FAWCETT, J.

On July 3, 1907, Eleazer Cole filed a homestead entry
on government land in Logan county. On July 22, 1907,
the answer of defendants alleges: "Said Eleazer Cole
made and published his last will and testament, which was
thereafter duly admitted to probate, in the county court
of Logan county, Nebraska, and that, by the terms of said
will, said Eleazer Cole bequeathed to the plaintiff, John
J. Cole, all of the estate, both real and personal, of which
he might die seized, at his decease." On June 20, 1908,
he died. After his death John went upon the land and
continued the residence thereon, initiated by his father,
for the length of time, and made the improvements neces-
sary to obtain a patent. He then made final proof and ob-
tained a patent running to "The Heirs of Eleazer Cole."
In making this application, he did not present the will to
the United States land department, nor call the attention
of the officials of the department to the fact that his father
had left a will. The patent was issued May 16, 1912. On
October 21, 1912, he commenced this suit to quiet title,
making his sister and the children of a deceased brother
parties defendant. He bases his claim on section 2291,
Rev. St. U. S., which provides that after the expiration of
five years from the date of entry, "if at the expiration of
such time, or at any time within two years thereafter, the
person making such entry; or if he be dead, his widow; or
in case of her death, his heirs or devisee," may prove up
and obtain title. The district court found that plaintiff

was not entitled to the relief sought, found that plaintiff
and defendants were the heirs of Eleazer Cole, and are the
owners of the land in the proportions of one-third to plain-
tiff, a son of Eleazer Cole, one-third to the defendant Mar-
tha Jane Wolff, a daughter, and the other third in equal
parts to the other four defendants, who are the children of
William P. Cole, a deceased son. From this decree plain-
tiff appeals.

The controlling question in the case is whether, under
the section of the Revised Statutes of the United States,
above cited, and under the facts in this case, Eleazer Cole
had the power by will to devise his interest in the land in
controversy, or his right to such land as an entryman, to
the plaintiff to the exclusion of his daughter and grand-
children. It is argued in the brief of counsel for defend-
ants that the will was admitted to probate by the county
court without notice to the heirs of the decedent or a
waiver of such notice by them. We do not think defend-
ants are in a position to urge this point, as the quotation
from the answer above set out shows an admission that
the will was "duly admitted to probate." Without that
admission the point would have to fail, for the reason
that there is no evidence in the record that the heirs of
the decedent were not all present at the time the will was
probated, and consenting thereto.

In this condition of the record, we shall only consider
the one point, viz.: Did Eleazer Cole have a devisable
interest in the land, or in his entry thereof which he could
pass by will? It is argued by defendants that the per-
sons named in section 2291, Rev. St. U. S., as the ones
who may complete the residence of an entryman who dies
before he is entitled to a patent, do not take the property
by descent; that they are entitled in their own right to
complete the entry and receive a patent; that the statute
vests in them, where there is no widow, upon their compli-
ance with the prescribed regulations, all the rights to per-
fect and complete the entry and obtain a patent which the
original entryman might have had if he had lived; that
they become the donees or grantees of the government. If

section 2291 designated the widow and heirs only as the ones to whom the right to perfect and complete the entry and obtain a patent is given, as is the case under the Timber Culture Act (20 U. S. St. at Large, ch. 190, p. 114) and the Oregon Donation Act (9 U. S. St. at Large, ch. 76, p. 496), upon which some of the cases cited by defendants are based, the contention of defendants would be sound, but in the homestead act, and in that act only, the entryman's devisees are placed upon the same footing with his heirs. Note the language of the act: "or, if he be dead, his widow, or, in case of her death, his heirs or devisee." Rev. St. U. S. sec. 2291. The rule as to the binding force of decisions of the United States land department is well stated in the fourth paragraph of the syllabus, in *Ross v. Wright,* 29 Okla. 186, as follows: "While a decision of the land department on matters of law are not binding on the courts, they should not be annulled unless they are clearly erroneous." An examination of the decisions of the department of the interior and general land office, in cases relating to the public lands, shows clearly how the officers of the general government, in whom is vested the power to pass upon homestead entries and proofs of residence and to issue patents, construe section 2291: "The devisee of a homestead claimant is entitled to all the privileges that would descend to the heirs." In the case of *H. C. Dodge,* 1 Land Dec. 47. "In the event of a homesteader's death, final proof may be submitted by any one of the devisees, and, if such proof is found satisfactory, the certificate should issue in the name of the devisees of the said homesteader generally." *Brown v. Hughes' Devisees,* 17 Land Dec. 156. "Where an instrument purporting to be the last will and testament of a deceased homestead entryman is duly admitted to probate in the proper court, it will be recognized by the department as legally established." *Eberhardt v. Heirs of Selich,* 33 Land Dec. 342. In that case the entryman died about a year and a half after making his entry. He left a will devising all his property, and especially his interest in his homestead, to the Evangelical Lutheran Church. After a very full dis-

cussion the right of the church as devisee was sustained. In the case of *Ellen S. Eustance,* 40 Land Dec. 628, it is held: "Upon the death of a homestead entryman prior to the submission of final proof, leaving no widow, or minor children entitled to claim under section 2292, Rev. St., patent upon proof subsequently submitted will issue to his heirs generally, unless it appear from the record, prior to the issuance of patent, that the entryman made a will purporting to devise his interest in the entry, in which event patent will issue to his heirs or devisees, leaving it to the local courts to determine who the heirs are and what their interests may be.

"Where the land department upon the showing in the record then before it properly issued a patent to the heirs of a deceased entryman, and it subsequently developed that the entryman had left a will devising the entry, it will not accept a surrender of the patent accompanied by a deed executed by the devisee purporting to reconvey the land to the United States, and issue a new patent to the devisee of the entryman, but will leave it to the local courts to determine who under the patent already issued is entitled to the land."

As a reason why the department would not accept a surrender of the patent accompanied by a deed, reconveying the land to the United States, and issue a new patent to the devisee of the entryman, the opinion states (p. 630): "It is clear, therefore, that the department would have no authority to cancel the patent upon the present showing, and it would decline to cancel it upon any showing, as such action would involve an adjudication and finding as to who the heirs are, which the department declines to undertake. It would still be necessary, even if the old patent were canceled and a new one issued to the heirs or devisees, to resort to court procedure for determination as to the proper claimant or claimants under the patent and their respective interests. It is suggested that the proper procedure for the petitioner is, in case she claims to be the sole and only proper claimant of the land involved, to file a bill in equity in the proper local court to

have the title declared vested in her." This is precisely what plaintiff has done in the present suit.

*Hays v. Wyatt,* 19 Idaho, 544, is cited and copiously quoted from in plaintiff's brief. Defendants contend that the case is not an authority against them, for the reason that at the time of the entryman's death, in that case, he had completed his term of residence on the land and had given notice of the time when he would make his final proof, and that all that remained for him to do was to present his final proof when he would be entitled to a patent; that the right to a patent had therefore vested, and that under such circumstances it might be conceded that the entryman had a devisable interest. There is force in this construction of the cited case, but we are unable to agree with counsel's contention that those facts necessarily change the rule. The conditions with which the entryman was required to comply before he could obtain a patent had not all been complied with at the time he died. One of the conditions to obtaining a patent, which was just as essential as every other condition, was that he would present his final proof. Until that proof was presented no patent would ever issue, and, regardless of the fact that he may have lived upon the land the length of time required to entitle him to make final proof, if he failed to make such proof within two years thereafter, all his rights as an entryman would lapse. The title was still in the government. The right to demand a patent did not yet exist and would never exist until he made his final proof. He therefore had no more right to then devise the land than he would have had at any time prior thereto. The only thing which he could then devise would be his interest in the entry, or, stated another way, the rights which he had acquired as an entryman. If he could do that after full residence, but prior to final compliance with the statute, it seems to us he could do it at any time after filing his entry and entering upon the land. The reasoning of the court in the *Hays* case is so applicable here that we feel disposed to quote it more extendedly than is perhaps necessary. On page 552 it is said:

"The devisee is a person specially nominated by the decedent in his will to take his estate. He, as special nominee, takes precedence over the heirs, who only take the estate in the absence of a devise. However, appellant contends that the right to devise property under the provisions of said sections of the statute is limited to cases in which there are no heirs. We find no such limitation in the statute. There being no minor children, said section 2291 gives a priority in favor of the widow over the heirs or devisees, and section 2292 gives a priority in favor of infant children, and, in construing those two sections together, the supreme court of the United States held in *Bernier v. Bernier,* 147 U. S. 242, that the homestead would descend equally to minor and adult children. In that case there were five minors and five adults and no widow or devisee. Taking the provisions of the two sections as they stand, under that decision, they recognize the rights accruing to a homestead in the following manner: First, to the widow, if there be one; second, to the minor children, and, if the children are partly minors and partly adults, then in equal shares to each without regard to minority; third, to the devisee, if there be one; fourth, to the heirs."

The court then considers *Chapman v. Price,* 32 Kan. 446, relied upon by appellants in that case and by defendants in this, and clearly shows the distinction between that case and the case at bar. Further considering section 2291, it is said (p. 557):

"It further provided that, in case the entryman should leave no widow surviving him, the homestead should go to his 'heirs or devisee.' This left the matter entirely at the option of the entryman, in case he left no widow surviving him, as to whether he would leave his homestead to his heirs or his devisee. In other words, he could devise the homestead and thereby cut off the heirs. Congress, therefore, thought it necessary to add section 2292, and thereby prevent the entryman from devising the homestead away from the minor heirs in case he left no widow. But congress said nothing in this section about protecting heirs

who are over the age of 21 years. It therefore seems clear to us that congress intended, in case of the death of the homesteader, to first protect the widow, who would be the remaining head of the family and would be responsible for the protection and maintenance of the minor children; that, in case he left no widow surviving him, the homestead should then be left to those who would be dependent upon the patrimony for their protection and education. Congress was clearly not legislating by either section 2291 or section 2292 for the specific protection of heirs who had attained their majority—those who had arrived at their maturity and were therefore supposed in law to be able and capable of earning their own livelihood and taking care of themselves. After reaching that age, they would be in a position to take homesteads for themselves. So it appears to us that congress intended to leave it to the option and pleasure of the homesteader either to leave his homestead to his adult heirs without making any will, or, if he preferred to devise the homestead to some one else, he might do so, and thereby cut off the adult heirs."

*Cooper v. Wilder*, 111 Cal. 191, and *Walker v. Ehresman*, 79 Neb. 775, upon which the trial court evidently relied, were both cases under the Timber Culture Act, and *Hall v. Russell*, 101 U. S. 503, was under the Oregon Donation Act, in neither of which are devisees named in the class of persons who may succeed to the entryman's rights. Those cases were properly decided, but they are not authority here.

After a careful consideration of the question, we hold that, under section 2291, Eleazer Cole had full power to devise his interest in the homestead to plaintiff, and thus designate him as the one who should succeed to his rights as entryman and complete the fulfilment of the requirements of the homestead act and obtain the title and subsequent ownership of the land in controversy. The fact that when he applied for a patent he did not present the will to the land department cannot, in the absence of a plea and proof of facts constituting an estoppel, defeat his right to have his title quieted in the proper local court.

In thus holding, we feel that we are not only properly construing the homestead act, but that we are doing equity in this case. The stipulation of the parties shows that all were of full age at the date of the death of Eleazer Cole, and the undisputed testimony of plaintiff shows that his father, at the time of his death, was 82 years of age; that he had lived with plaintiff for ten years prior to his death; that during that time plaintiff contributed to his father's support, and that none of the defendants had so contributed; that none of the defendants lived upon the homestead after the father's death; that none of them even knew at that time that he had taken up this homestead; and that the first intimation he ever had that defendants claimed any interest in the land was when he brought this suit to quiet title.

For the reasons above given, the judgment of the district court is reversed and the cause remanded, with directions to enter a decree in favor of plaintiff, in accordance with the prayer of his petition.

REVERSED.

HAMER, J., not sitting.