HAHN, Administrator, Respondent, vs. KEITH and others, Appellants.

*October 8, 1919—February 10, 1920.*

*Tenancy in common: Adverse possession: Permissive possession ripening into adverse: Ouster of cotenants: Notice: Evidence: Burden to show permissive possession: Limitation of actions: Limitation running against cotenant continuing as to minor heir: Taxation: Redemption from tax sale by minor: Appeal.*

1. The initial possession of a father's farm by a son who remained in possession after his father's death was permissive, but by declarations or. acts, or both, such possession could have become adverse as to other children.

2. Continuous and exclusive possession of land for over twenty years raises the presumption that possession is adverse and throws the burden of proof upon the true owner to show that it was permissive.

3. There may be an ouster of cotenants by adverse possession; and the best evidence of ouster by a tenant in common is the exclusive actual possession of one claiming to hold adversely.

4. Actual notice that the possession of a tenant in common is adverse as to his cotenants may be given by acts as well as by declarations.

5. Where a son who had remained in possession of his father's farm following the father's death had been in exclusive, notorious possession for thirty years, treating the land as his own, making valuable improvements, paying taxes, and using the proceeds of the crops, and where other heirs who had knowledge thereof never questioned the son's right to so occupy the farm and during such time never asked for an accounting; the trial court was warranted in finding that the son's possession was adverse to that of the other heirs, notwithstanding their claim that they had permitted him to use the farm expecting to receive their share upon his death.

6. Where the statute of limitations began to run in favor of a son in possession of the farm of his deceased father as against another heir, it also began to run as to an infant child of such heir. But such rule would not apply to redemption by a minor from a tax sale, sec. 1166, Stats., giving him one year after reaching majority within which to redeem.

ESCHWEILER, KERWIN, and ROSENBERRY, JJ., dissent.

APPEAL from a judgment of the circuit court for Sauk county: JAMES O'NEILL, Judge. *Affirmed.*

Action begun June 4, 1917, to quiet title to eighty acres of land originally owned by William Keith, the plaintiff's father. The defendants claimed title to the land as heirs and cotenants of plaintiff and asked for partition and an accounting. Joseph Keith, the original plaintiff, has died since the appeal was taken and his administrator, *W. H. Hahn,* has been substituted in his place, but for convenience Joseph Keith will be called the plaintiff. William Keith, the father of plaintiff and the common ancestor of the parties, died about 1862 leaving him surviving (1) a daughter, Rachel Jessop, now deceased, who left two daughters, *Fanny Almy* and *Nellie Jessop;* (2) Joseph Keith, the plaintiff; (3) Margaret Coyne, now deceased, who left three daughters, *Catherine Burns, Margaret Kehrer,* and Maria Logan, the latter of whom died in 1906 leaving a son, *George Logan,* sixteen years of age at the time of the trial; (4) *Elizabeth Jessop;* (5) Nancy, deceased without issue; (6) *Iona Winnerston;* and (7) *George Wesley Keith.* Sarah Keith, his widow, never remarried and died in 1892. She continued to live on the farm till November, 1883, when she moved therefrom, never to return to it as her residence.

Plaintiff claimed title to the land through a deed from his mother executed in 1883 and adverse possession since the death of his father. The substance of the testimony relating to adverse possession is as follows: After the death of the father the mother of plaintiff and the children, of whom plaintiff was the oldest son, continued to live on the farm as a family. As soon as the other children reached a suitable age they went out to work, returning to the farm occasionally for longer or shorter periods as convenient. After· they left the farm they contributed very little to the support of their mother. · Joseph was married in 1871 and

had eight children.    His wife died about 1893, and he never remarried.  In 1883 he received a warranty deed from his mother purporting to convey the whole eighty acres to him. The deed was recorded in 1901.    He gave his mother a mortgage when the deed was delivered, which was recorded January 4, 1884.    In 1896 he executed and recorded a mortgage to one Lizzie Fish, and another one in 1901. Plaintiff lived continuously upon the farm after the death of his father up to the time of the trial, except for about two years prior to November 3, 1883, when he lived on an adjoining farm, and from November, 1883, he had exclusive possession of the farm till the time of the trial. From 1875 to 1882 the land was assessed to plaintiff and he paid the taxes, and the same is true since 1884.    So far as use and occupancy are concerned, the plaintiff treated the farm as his own.    He made valuable improvements thereon and never was asked to and never did account to any one for the proceeds of the farm.    He supposed his mother and the other children had an interest in the farm when the father died, but seemed to have no clear conception of what each one's interest was.    The brothers and sisters still living testified to the effect that they were satisfied to let plaintiff have the use of the farm while he lived, and supposed that upon his death they would receive their share.    This was the chief reason why they never asked for an accounting or asserted title till this action was brought.    The grandchildren naturally did not know much about the matter.

The court found that plaintiff had title by adverse possession, and entered judgment quieting title in him.    The defendants appealed.

For the appellants there was a brief by *F. R. Bentley* of Baraboo, attorney, and *Henry Bohn* of Reedsburg, guardian *ad litem* for *Wesley Keith,* and oral argument by *Mr. Bentley.*

For the respondent there was a brief by *Stone & Quimby* of Reedsburg, and oral argument by *James A. Stone.*

The following opinion was filed November 6, 1919:

VINJE, J.   Unquestionably plaintiff's initial possession was permissive and not adverse, but permissive possession may ripen into an adverse one by declarations or acts, or both.   2 Corp. Jur. p. 124, §§ 210, 133, and 228; *Bartlett v. Secor,* 56 Wis. 520, 14 N. W. 714; *Meyer v. Hope,* 101 Wis. 123, 77 N. W. 720.   And continuous and exclusive possession of land for over twenty years raises the presumption that possession is adverse and throws the burden of proof upon the true owner to show that it was permissive. *Bartlett v. Secor, supra; Meyer v. Hope, supra.*   There may also be an ouster of cotenants by adverse possession. 1 Ruling Case Law, 743.

In this case the evidence is practically undisputed, and the question is whether the finding of the trial court that plaintiff had gained title by adverse possession is so clearly wrong as not to be a permissible inference from all the evidence. If it is a permissible inference we ought not to disturb it. *Meyer v. Hope,* 101 Wis. 123, 77 N. W. 720.   It is argued by defendants that in making its findings of facts the trial court overlooked the rule that as cotenants actual notice of adverse possession must be brought home to them and that the evidence fails to establish such notice.   It is true that no actual notice by declaration is shown, but actual notice may be given by acts as well as by declarations.   And so, also, the best evidence of ouster is the exclusive, actual possession of the one claiming to hold adversely.   1 Ruling Case Law, 702.   Here plaintiff was in possession of the land for nearly fifty years, rendering an account therefor to no one. He was in the exclusive, notorious possession of it for some thirty years previous to the commencement of the action, to the knowledge of the defendants, treating it in every respect

as his own.   He made valuable improvements upon it, paid the taxes, and used the proceeds of the crops as his own. Since their father or grandfather died they never questioned the right of plaintiff to so occupy and use the farm, and never asked for any accounting till this action was brought. From such admitted facts it seems to us the trial court was justified in inferring that plaintiff's possession was adverse, to the knowledge of the defendants, and that their explanation of the reason why they permitted him to occupy the farm did not satisfactorily rebut the presumption arising from his long-continued open, notorious, and exclusive possession that it was adverse.   This subject is quite fully treated in *Meyer v. Hope,* 101 Wis. 123, 77 N. W. 720, and in the Wisconsin cases therein cited, and will not therefore be rediscussed here.   Suffice it to say that we cannot set aside the trial court's finding of fact as to adverse possession.

Since the statute of limitations began to run against the mother of *George Logan,* a minor defendant, it also began to run against him.   *Swearingen v. Robertson,* 39 Wis. 462.   But of course such a rule does not apply to redemption by minors from tax sales, because sec. 1166, Stats. 1917, gives them one year after reaching majority within which to redeem.   *Karr v. Washburn,* 56 Wis. 303, 14 N. W. 189; *Corry v. Shea,* 144 Wis. 135, 137, 128 N. W. 892.

*By the Court.*—Judgment affirmed.

ESCHWEILER, J. (*dissenting*).   Although the court below based its conclusion that plaintiff was owner apparently upon two grounds: first, more than twenty years' adverse possession, and second, by entry under the deed from his mother of November, 1883, recorded August 17, 1901, and more than ten years' possession thereunder, yet the majority opinion mentions only the first ground as the basis of its judgment.   The opinion specifies no definite time when the plaintiff flung to the breeze his banner of exclusive

ownership (*Ill. S. Co. v. Jeka,* 123 Wis. 419, 430, 101 N. W. 399) so as to transform what was until then concededly permissive possession into adverse possession. There was no change in the manner of his possession of this farm, so far as these cotenants were concerned, during the entire period from his father's death in 1862 until the commencement of this action; he farmed it, improved it, and took its proceeds as well before as after 1883, and the permission given by his cotenants was exactly the same during the entire period. So that neither the form nor manner of the possession or of the permission has changed. That being so, it would seem as though the element of good faith between cotenants holding through the same source of title would require some positive declaration or act brought home to his cotenants of his intention to repudiate their rights and assert an exclusive one in himself. If not, then cotenants are on the same footing as strangers. But this court has never so regarded them. *Hunter v. Bosworth,* 43 Wis. 583, 592; *Sydnor v. Palmer,* 29 Wis. 226, 249; *McPherson v. Featherstone,* 37 Wis. 632, 643; *Bourne v. Wiele,* 159 Wis. 340, 343, 150 N. W. 420. The same rule of actual notice should apply here as is applied between mortgagor and mortgagee. *Bur v. Bong,* 159 Wis. 498, 503, 150 N. W. 431.

Reliance is placed upon his improvements, yet that of the building of the house was in 1882, before the deed from his mother, while she was in possession, and to replace the old one then burned, and therefore that could not be fairly treated as a hostile act. The barn, erected at a cost of $1,000, was not built until 1901, so that if that was a raising of the flag of invasion it has not yet ripened into title. His improvements, therefore, ought not to be deemed as acts of ouster as evincing a settled purpose to exclude his cotenants. Some such purpose must appear. *Ipswich v. Proprietors, etc.* 218 Mass. 487, 491, 106 N. E. 169.

Reliance is placed upon his payment of taxes, yet this

court has held that he can acquire no rights as against his cotenants by the purchase of a tax title. *Hannig v. Mueller*, 82 Wis. 235, 52 N. W. 98; *Allen v. Allen*, 114 Wis. 615, 91 N. W. 218. See, also, *Harris v. Brown* (Iowa) 169 N. W. 664. The mere payment of such taxes ought not to give him a safer foundation upon which to build his new and adverse title than such a purchase would.

The court below found laches on the part of defendants. Yet this court in *Saladin v. Kraayvanger*, 96 Wis. 180, 70 N. W. 1113, where there was no notice of any change in the character of the holding by the one asserting such a claim against his cotenants, denied such a defense. If there were laches, there certainly ought to be some definite time established when the existing relationship of the parties should have been changed. Unless the front end of such period of the twenty years is certain and fixed, the other end is rather wavering and uncertain. No particular time is suggested when that which was concededly permissive should have been halted by some affirmative act or declaration on the part of defendants or was halted by an affirmative act on plaintiff's part. Some such act or declaration is necessary. *Lecroix v. Malone*, 157 Ala. 434, 47 South. 725; *Hynds v. Hynds*, 274 Mo. 123, 202 S. W. 387; *Zimmerman v. First Nat. Bank* (Mo.) 201 S. W. 852. The defendants ought not to be penalized for their continued charitable permission.

The case cited in the majority opinion of *Bartlett v. Secor*, 56 Wis. 520, 14 N. W. 714, was not one involving tenants in common, but between persons claiming through different conveyances, and therefore not controlling in this case; and the same is true of *Meyer v. Hope*, 101 Wis. 123, 77 N. W. 720. In the latter case, in defining adverse possession, the expression there used includes the word "unexplained" as one of the essential elements of such possession, as well as its needing to be notorious, exclusive, and continuous. But here the testimony of plaintiff himself does explain, and explain clearly, that he thought the de-

fendants had some interest in the land, shows that his pos-
session was permissive, that defendants had title, and leaves
unexplained only his failure to deny to them, at any time
prior to the commencement of this action, such existing
right on their part. The same case, page 126, shows also
the very substantial fact, not here present, that the original
owner had presumptive knowledge of the claim of exclusive
ownership by being a witness to the very instrument, a
mortgage, in which such assertion was made. It is also
said, page 127, "permissive possession, however long con-
tinued, does not make title," and on the same page quotes
with approval from *Kirk v. Smith,* 9 Wheat. 241, the fol-
lowing: "It would shock that sense of right which must be
felt equally by legislators and by judges, if a possession
which was permissive, and entirely consistent with the title
of another, should silently bar that title." This court has
also said in *Challefoux v. Ducharme,* 4 Wis. 554, 565, that
silent possession accompanied by no act which can amount
to an ouster is insufficient upon which to found title by ad-
verse possession.

The finding by the court below that the defendants ought
to have known since 1883 of plaintiff's hostile claim, and
upon which finding the majority opinion affirms the judg-
ment, is rather an inference or conclusion of law gathered
from undisputed facts than the judicial determination as to
where the truth lies, arrived at when there is dispute over
facts, and therefore the former is not so controlling in this
tribunal as the latter. *Weigell v. Gregg,* 161 Wis. 413, 416,
154 N. W. 645.

The plaintiff assumed the burden of showing title as
against his cotenants, all claiming under the same ancestor,
and I do not think he has overcome the record title, and that
defendants should have judgment.

I am authorized to state that Justices KERWIN and
ROSENBERRY concur in this dissent.

A motion for a rehearing was denied, with $25 costs, on
February 10, 1920.