ANNA STOLL and Loretta Erhart, Appellants, v. MARY GOTT-BREHT and William Gottbreht, Respondents.

(176 N. W. 932.)

**Public lands — right of heirs under patent.**

1. Where a deceased entryman has died before final proof, and one of his heirs, claiming as a sole devisee of the land, has made final proof in behalf of the heirs, and a United States patent has issued, to the heirs of the deceased entryman, such heirs take title to the land under the patent as cotenants, and as special purchasers or donees, and not by reason of any right or interest in the estate of the deceased.

**Descent and distribution — adverse claims.**

2. Where a prescriptive title to land is claimed under § 5471, Comp. Laws 1913, through adverse possession and continuous payment of taxes for over ten years, by one who received a deed, subsequently lost and unrecorded, from his wife, one of the heirs of a deceased entryman, who, by will, had devised such land to such wife, and, where, upon final proof made by the wife, a United States patent is issued to the heirs of such deceased entryman, it is *held:*

(a) That the adverse claimant, the husband, named as an executor in the will, and knowing the nature of the title, is in the position of a cotenant with the other heirs in the land patented, and must establish affirmatively adverse and hostile possession by acts that serve to oust or disseise the other cotenants.

(b) That the heirs having received specific bequests under the will, without knowledge of their rights, as cotenants, in the land, are not estopped to assert their titles.

Opinion filed February 19, 1920. Rehearing denied March 11, 1920.

Action to determine adverse claims in District Court, Rolette County, *Buttz,* J.

From a judgment in favor of the defendant, William Gottbreht, the plaintiffs have appealed and demand a trial *de novo.*

Judgment reversed and title quieted with directions.

*Verret & Stormon, J. A. Capwell,* and *C. S. Aldrich,* for appellants.

Until the will has been duly admitted to probate in the proper court it is wholly ineffectual as an instrument of title.

A will must be probated in the proper court provided by the Constitution and statutes before it is effectual or will pass title. Honsinger v. Stewart, 34 N. D. 513, 159 N. W. 12; Walsh v. Krause, 38 N. D. 264, 181 N. W. 1891; Re Peterson, 22 N. D. 480, 134 N. W. 751.

A will must be probated within six years after the testator's death if made known within that time. 40 Cyc. 1225, 1256; Comp. Laws 1913, §§ 8633, 8634; 57 L.R.A. 264 (note on Statutory Limitations).

There must be color of title to the real property in the persons claiming adverse possession under this statute. Comp. Laws 1913, § 5471; J. B. Streater Jr. Co. v. Fredrickson, 11 N. D. 300, 91 N. W. 692; Power v. Kitching, 10 N. D. 254, 86 N. W. 737; Stiles v. Granger, 17 N. D. 502, 117 N. W. 777; Wright v. Jones, 23 N. D. 191, 135 N. W. 1120.

*L. D. Gooler* and *Cuthbert & Smythe,* for respondents.

An unprobated will is sufficient to give color of title. 2 A.L.R. 1457; Hitt v. Carr, 62 Ind. App. 80, 109 N. E. 856.

BRONSON, J. *Statement:*—This is an action to quiet title in 160 acres of land in Rolette county, North Dakota. John Kelly made a homestead entry some three or four years before his death; he died in 1902 without having made final proof. His heirs are the defendant, Mary Gottbreht, a daughter, the defendants Frank Higgens and Frances Higgens, the husband and daughter, respectively, of a post deceased daughter, and the plaintiffs, Anna Stoll and Loretta Erhart, the

daughters of a prior deceased son. A short time before his death, this entryman made a will whereby he devised the homestead in question to the defendant, Mary Gottbreht and made other specific bequests therein, particularly, $50 in money to be paid each of the plaintiffs. The defendant, William Gottbreht, was designated as executor of this will. He kept this will in his possession for about two or three years. He then took the will to an attorney for probate. The will was lost by the attorney; it has never been probated. After the death of the entryman, the defendants Mary Gottbreht and her husband, William Gottbreht, occupied this homestead. The defendant Mary Gottbreht later made final proof. The particular time and manner in which the same was made is not disclosed in the record. Patent was issued to the heirs of John Kelly, the entryman, on Dec. 1, 1904. From this patent, introduced in evidence, it appears that the same was issued to such heirs upon the claim of the heirs of said John Kelly having been duly established, and consummated in conformity with the law. The husband, William Gottbreht, testified that he made an agreement with his wife, Mary Gottbreht, to pay the obligations of the deceased, and to receive a deed from her of this land. That she made such deed. The deed, however, has been lost and was never recorded. He further testified that he went into possession of this land after the death of the entryman, and has farmed, or rented, it ever since. He also testified that he has paid the taxes on such land ever since 1903. Pursuant to the will, payment was made annually to the plaintiffs, of the interest, at 10 per cent, upon the bequests of $50, amounting to $10. Finally, in January, 1917, the bequest amounting to $110 including interest were paid. In December, 1916, this defendant, the husband, sent quitclaim deeds covering this land for execution to each of the plaintiffs. As the plaintiff, Loretta Erhart, testified, she and her sister then first knew about this real estate. The plaintiffs, at the time of the trial, were aged twenty-three and twenty-five years, respectively; they had received the bequests, interest, and principal, mostly through their mother, being minors for many years after the decease of the entryman. Both the mother and the daughter, the plaintiff, Loretta Erhart, testify that they knew nothing about this homestead; that the money for the bequests was received under the thought that it related to personal property, under the terms of the will.

This action, accordingly, in March, 1918, was instituted by the plaintiffs, as heirs, to quiet title in their respective undivided one-sixth interests, in the land. A cause of action was also interposed, for the value of the use and occupation of the land, as against the defendant Mary Gottbreht. The defendant, William Gottbreht, interposed an answer setting up title by reason of the will, the conveyance from his wife, and his payment of the taxes, and occupancy of the premises adversely for over ten years. The defendant Mary Gottbreht in her answer alleges also the will and the sale of the land to her husband. Upon these pleadings the issues were framed. In the trial court, findings were made quieting title in fee, in the defendant William Gottbreht. From the judgment rendered thereupon, the plaintiffs have appealed and demand in this court a trial de novo.

*Contentions:*—The plaintiffs, the appellants herein, contend that the trial court had not original jurisdiction in the probating of a will or in receiving the proof thereof as a last will. That such unprobated will was not color of title upon which might be predicated adverse possession under the statute: That no adverse possession has been shown in the record as against these plaintiffs as heirs.

The respondents contend that proof of the lost will was used only for the purpose of establishing color of title; that otherwise it is not denied that a will must be probated. It is contended, however, that the plaintiffs were estopped by receiving the bequests so made; that the record discloses a title established through adverse possession and the payment of taxes, under color of title, pursuant to § 5471, Comp. Laws 1913.

The consideration of two legal questions, presented upon this record, determine the issues and the contentions made, viz.:

1. The nature of the title conveyed by the patent.

2. The adverse possession shown.

*1. Nature of title.*—It is apparent that when the entryman died he did not possess the title to land involved. He then possessed such rights as an entryman has before final proof. 32 Cyc. 833; 8 Fed. Stat. Anno. 2d ed. p. 562. After his decease, his heirs or devisees may complete the statutory requirements and may make final proof. U. S. Rev. Stat. § 2291, Comp. Stat. § 4532, 8 Fed. Stat. Anno. 2d ed. 558; 37 Stat. at L. 132, chap. 166, Comp. Stat. § 4563, 8 Fed. Stat. Anno. 2d

ed. p. 614. In making such final proof, such heirs or devisees take directly from the government as special purchasers or donees, and not by reason of their right in the estate of the deceased. Martyn v. Olson, 28 N. D. 317, L.R.A.1915B, 681, 148 N. W. 734; Martin v. Yager, 30 N. D. 577, 582, 153 N. W. 286. On the face of the patent in this case, not only was proof made, evidently, in behalf of the heirs of the deceased entryman, but, the patent, in fact, was issued to such heirs.

This patent on its face carried the title to the heirs of such entryman, not to the defendant William Gottbreht, or to the defendant Mary Gottbreht, excepting her interest as heir therein, 8 Fed. Stat. Anno. 2d ed. p. 566.

The will accordingly even though valid, and duly probated, did not have the effect of transferring from the deceased entryman his title in the premises to the devisee thereof. Gjerstadengen v. Van Duzen, 7 N. D. 612, 66 Am. St. Rep. 679, 76 N. W. 233.

Accordingly, upon the issuance of this patent, under which title is claimed either directly or through color of title, by all of the parties to this proceeding, the title was vested in the heirs of the deceased entryman. The plaintiffs thereupon had each an undivided one-sixth interest in fee in such land. The defendant Mary Gottbreht, an undivided one-third interest therein. The heirs of such deceased entryman thereupon became and were cotenants in such land. 32 Cyc. 834, 1034.

2. *The adverse possession.*—It is deemed wholly immaterial to consider whether the claimed will constituted color of title or not. The only claim made by the respondents is that it does constitute color of title. Clearly, the title of the defendant William Gottbreht (as claimed), rests wholly, not only upon proper proof of color of title, but also upon the fundamental requisites necessary to establish title by adverse possession under the statutory provisions, which requires an actual open, adverse, and undisputed possession of land under color of title for a period of ten years, with payment of all taxes and assessments legally levied thereon. Comp. Laws 1913, § 5471. We are clearly of the opinion that the plaintiffs are not estopped to deny either the validity of the will, as title or color of title, or the sufficiency of the claimed acts of adverse possession. Gjerstadengen v. Hartzell, 9 N. D. 269, 274, 81 Am. St. Rep. 575, 83 N. W. 230. Nothing in the record is disclosed to show knowledge on the part of the plaintiffs, direct or

indirect, concerning their rights in this homestead, or of the acts of the defendant William Gottbreht, and his wife, in regard thereto, prior to 1916.

Upon this record it is evident, under well-established principles of law, that the defendant William Gottbreht, has not established the hostile adverse possession required under the statute. As an alleged executor of a supposed will, he had possession of this land. After the patent was issued to the heirs, he had possession of this land as a cotenant, by reason of the alleged deed made by his wife, to him.

As cotenants, the possession of one was presumed to be the possession of all. Each cotenant was entitled to the possession of such land. In order to overcome this usual presumption and to start the statute to operate by adverse holding, it was necessary for the cotenants, claiming adversely, to perform or do some act in direct hostility to the claims of his other cotenants, so as to show in some way an ouster of the rights of such cotenants. This meant such an emphatic deprivation of the rights of the cotenants, as to show either direct knowledge to the other cotenants, of such claim, or of circumstances sufficient to establish such knowledge, or the means of the knowledge thereof. Ildvedsen v. First State Bank, 24 N. D. 227, 235, 139 N. W. 105; Lavin v. Kreger, 20 S. D. 80, 104 N. W. 909. See note in 109 Am. St. Rep. 609, 623. See 38 Cyc. 27; Reeves, Real Prop. p. 963; Tiffany, Real Prop. § 168, p. 390.

However, it may be contended that this rule does not apply for the reason that the defendant Wm. Gottbreht had received a deed from his wife of the whole fee; that therefore he was in the position of an independent grantee claiming to hold in severalty, and not required to disclose or show acts of ouster other than those required of any person claiming, independently, a prescriptive title.

Upon this record, the answer is that the defendant knew full well the title of the plaintiff as cotenant of his wife; as grantee of his wife, as the holder of an unrecorded deed, and as claimed executor of the estate, he was not in a position to claim the position of an independent grantee. Then he well knew that he was, in fact, a cotenant, of the plaintiffs. Under the circumstances he still had imposed upon him the obligation, in order to assert hostile possession, to bring home to his other cotenants knowledge of his claims by such means as to con-

stitute legal knowledge to his cotenants of his hostile intentions. See Hvedsen v. First State Bank, supra. See Blessett v. Turcotte, 23 N. D. 417, 425, 136 N. W. 945; 38 Cyc. 36. See notes in Ann. Cas. 1915C, 1236, and 109 Am. St. Rep. 616.

.. This record does not disclose any attempt on the part of the defendants to give to the plaintiffs or even to their mother, who for many years was their natural guardian, any notice direct, or otherwise, of his intention to oust and deprive the plaintiffs of their undivided interest in this land. On the contrary, if any deduction is to be drawn from his actions it is to the effect that his conduct, with reference to any such information, served to keep from the plaintiffs or their mother the knowledge of the plaintiffs' actual interest in the lands involved. Such conduct secretly and clandestinely pursued by one cotenant may not thus start in operation the statute concerning adverse possession so as to deprive the plaintiffs of their title without their knowledge, even though the pretended disseisor may operate under a so-termed color of title. See Enderlin Invest. Co. v. Nordhagen, 18 N. D. 517, 524, 123 N. W. 390.

Upon the issues in the record herein, this court is not able to determine the rights of the parties concerning the rents and profits received from, or the value of the use and occupation of, the land. This is a matter for proceedings between cotenants for an accounting or otherwise as provided for by law. See 1 Reeves, Real Prop. p. 691. See Tiffany, Real Prop. p. 692, § 169; 38 Cyc. 63.

It is ordered that the judgment of the trial court be vacated, and that judgment be entered adjudging the plaintiffs to be, each, the owner of an undivided one sixth, and the defendant William Gottbreht, the owner of an undivided one third, right, title, and interest in fee, in the land, free from any right, title, or interest on the part of the plaintiffs, or defendants, in respect thereto. Further that the plaintiff recover costs of both courts as against the defendants Mary Gottbreht and William Gottbreht, and that such judgment so to be entered shall be without prejudice to the institution of proper proceedings concerning the rights, and profits received from, or the value of the use and occupation of, the land, between the parties as cotenants.

GRACE, J., concurs.

BIRDZELL, J., dissents.

ROBINSON, J. (concurring specially). I concur in the opinion as written by Mr. Justice Bronson; and, also, I do hold that the ten-year limitation statute under which defendant claims title, is void. The ten-year statute is chapter 158, Laws of 1899. Its title is: "An Act Relating to Titles to Real Property." That is no title at all. It is the same as an act relating to the Civil Code; or an act relating to the' Criminal Code; or an act relating to personal property. It is a mere blind and it in no manner indicates that the purpose of the act was to fix a limitation of ten years in which an action may be commenced to recover real property. The act does not give to the owner of real property a day, nor a minute to commence an action after it takes effect; and if it was void when passed, it is still void as to an action commenced years after its passage. If it was void as to an action commenced on the 1st day of July after its passage, it is still void, because time does not make it valid. The decision of the court in Power v. Kitching, 10 N. D. 254, 88 Am. St. Rep. 691, 86 N. W. 737, is clearly wrong and it should be expressly overruled.

CHRISTIANSON, Ch. J. (dissenting). This is an action to determine adverse claims to a quarter section of land in Rolette county. The trial court found, and the evidence establishes, the following material facts:

One John Kelly entered the land in question under the homestead laws of the United States of America. On January 23, 1902, he died without having made final proof. Kelly was the father of the defendant Mary Gottbreht, and the grandfather of the plaintiffs, Anna Stoll and Loretta Erhart. Mary Gottbreht had been caring for her father for some time prior to his death. He died in her home in Rolette county. Shortly prior to his death he executed a will and testament wherein he devised the homestead to the defendant Mary Gottbreht. He also made certain bequests, among others, one of $50 to each of the plaintiffs, with the proviso that they were to be paid interest thereon annually at the rate of 10 per cent until the principal was paid. The defendant Mary Gottbreht kept up the improvements on the land in controversy and made final proof thereon in 1902. Shortly thereafter she transferred it to her husband, William Gottbreht, by deed of conveyance. After Kelly's death the will was delivered to an attorney located at Rolla, the county seat of Rolette county, in order that he

might institute probate proceedings. No proceedings were brought, and apparently the will was lost by the attorney, who later left the state. The defendant William Gottbreht took possession of the premises under the deed. He farmed the same during the farming season of 1902, and has since remained in actual, open, and exclusive possession. He has treated the land as his own in every respect. He has, in his own name, paid all taxes and assessments levied thereon. He has made no accounting to anyone, but has retained whatever profits, and paid whatever losses, have been incident to the farming of the premises. For more than fifteen years prior to the commencement of this action he had been in possession, and in every possible manner openly and notoriously asserting title to the entire tract. It is undisputed that the two plaintiffs were each paid interest on their respective legacies at the rate of 10 per cent; that they understood that they received this as interest upon such legacies in accordance with their grandfather's will; that in January, 1917, the attorney for the defendants Gottbreht, prepared and sent quitclaim deeds to a bank in Nebraska (where plaintiffs reside), accompanied by draft for the amount of the legacies and one year's interest; that he wrote the two plaintiffs notifying them of this and requested that they call at the bank and execute the quitclaim deeds; that they called at the bank and received and cashed the draft, but refused to execute the deeds, and later brought this action.

Upon these facts the trial court concluded that the defendant— William Gottbreht is the owner of the land in question by virtue of § 5471, Comp. Laws 1913, which provides: "All titles to real property vested in any person or persons who have been or hereafter may be in actual open, adverse, and undisputed possession of the land under such title for a period of ten years and shall have paid all taxes and assessments legally levied thereon, shall be and the same are declared good and valid in law, any law to the contrary notwithstanding."

The plaintiffs appealed, and a majority of the court are of the opinion that the judgment should be reversed and the plaintiffs awarded the relief demanded in their complaint.

In the majority opinion it is said:

"The consideration of two legal questions presented upon this record determine the issues and the contentions made, viz.:

"1. The nature of the title conveyed by the patent.

"2. The adverse possession shown."

Upon the first proposition the majority opinion says: "When the entryman died he did not possess the title to land involved. He then possessed such rights as an entryman has before final proof. . . . After his decease, his heirs or devisees may complete the statutory requirements and may make final proof. . . . In making such final proof, such heirs or devisees take directly from the government as special purchasers or donees, and not by reason of their right in the estate of the deceased." With this statement I agree. The majority opinion continues:

"This patent on its face carried the title to the heirs of such entryman, not to the defendant, Wm. Gottbreht, or to the defendant Mary Gottbreht, excepting her interest as heir therein. 8 Fed. Stat. Anno. 2d ed. p. 566.

The will accordingly, even though valid and duly probated, did not have the effect of transferring from the deceased entryman his title in the premises to the devisee thereof. Gjerstadengen v. Van Duzen, 7 N. D. 612, 66 Am. St. Rep. 679, 76 N. W. 233.

Accordingly, upon the issuance of this patent, under which title is claimed, either directly, or through color of title, by all of the parties to this proceeding, the title was vested in the heirs of the deceased entryman. The plaintiffs thereupon had each an undivided one-sixth interest in fee in such land. The defendant Mary Gottbreht an undivided one-third interest therein. The heirs of such deceased entryman thereupon became and were cotenants in such land."

I do not agree with the majority members as to the effect which they attribute to the fact that the patent was issued to "the heirs of John Kelly."

Section 2291, U. S. Rev. Stat., Comp. Stat. § 4532, 8 Fed. Stat. Anno. 2d ed. p. 557, provides that after the expiration of the prescribed time "the person making such entry, or if he be dead, his widow, or, in case of her death, his heirs or devisee," upon proper proof being submitted, shall be entitled to a patent as in other cases provided by law.

Section 2292, U. S. Rev. Stat., Comp. Stat. § 4533, 8 Fed. Stat. Anno. 2d ed. p. 571, gives a priority in favor of infant children, in case

both father and mother are dead. The two sections were construed by the Supreme Court of the United States in Bernier v. Bernier, 147 U. S. 242, 37 L. ed. 152, 13 Sup. Ct. Rep. 244. According to that decision, the rights to the homestead of a deceased entryman accrue in the following order:

First, to the widow, if there be one; second, to the minor children, and, if the children are partly minors and partly adults, then in equal shares to each without regard to minority; third, to the devisee, if there be one; fourth, to the heirs. Hays v. Wyatt, 19 Idaho, 544, 552, 32 L.R.A.(N.S.) 397, 115 Pac. 13.

In the case of Re Dodge, 1 Land Dec. 47, the Commissioner of the General Land Office ruled that "the devisee of a homestead claimant is entitled to all the privileges that would descend to the heirs." See also, Allsop v. Dumas, 2 Land Dec. 82; Winters v. Jordan, 2 Land Dec. 85; Eberhardt v. Selich, 33 Land Dec. 342. In Eberhardt v. Selich, supra, the entryman devised his homestead to the Evangelical Lutheran Zions Church, of which congregation he was a member, with directions that at the expiration of a period of twelve years the land should be turned over to the Missionary Board of the Synod of Ohio and other states, and that said board should then become the owner of the land. In an exhaustive opinion the Secretary of the Interior sustained the rights of the devisee.

The Land Department has repeatedly ruled that it will not attempt to determine what heirs or devisees, or whether heirs or devisees, are entitled to the land. In the case of Re Eustance, 40 Land Dec. 628, patent had been issued generally to the heirs of the deceased entry-woman. Subsequently an application was made for a cancelation of the patent issued, and for the issuance of a new patent to one Matilda Peterson, as devisee. The application was accompanied by the patent, a certified copy of the will, and a deed reconveying the land to the United States. In denying the application the Secretary of the Interior said: "It is clear, therefore, that the department would have no authority to cancel the patent upon the present showing, *and it would decline to cancel it upon any showing, as such action would involve an adjudication and finding as to who the heirs are, which the department declines to undertake.* It would still be necessary, even if the old patent were canceled and a new one issued to the heirs or devisees, to

resort to court procedure for determination as to the proper claimant, or claimants, under the patent and their respective interests. It is suggested that the proper procedure for the petitioner is, in case she claims to be the sole and only proper claimant of the land involved, to file a bill in equity in the proper local court to have the title declared vested in her."

And when patent was issued for the land involved in Eberhardt v. Selich, 33 Land Dec. 342, wherein the rights of the devisee had been sustained in a contest proceeding, the department refused to issue patent to the devisee, and issued patent, following the language of the statute, to "the heirs or devisees of Julius Selich."

This policy of the Land Department has been recognized by the different courts that have had occasion to consider the matter. See Hays v. Wyatt, supra; Cole v. Cole, 98 Neb. 674, 154 N. W. 248; Anderson v. Muhr, 36 Okla. 184, 128 Pac. 296. See also Theisen v. Qualley, 42 S. D. 367, 175 N. W. 556.

In Cole v. Cole, 98 Neb. 674, 154 N. W. 248, the entryman made a will, whereby he devised his homestead to his son. The son later made final proof, and obtained a patent running to "the heirs of Eleazor Cole." In making proof he failed to present the will or call the attention of the officials of the Land Department to the fact that a will had been made. Later the son, who had been named as devisee in such will, brought an action to quiet title to the land, naming the other heirs of the decedent as parties defendant. The supreme court of Nebraska held: "The fact that when the devisee applies for a patent he fails to present the will of the decedent to the Land Department will not, in the absence of a plea and proof of facts constituting an estoppel, defeat his right to have his title quieted in the proper local court."

Under the Federal statutes, and the decisions interpretative thereof, the following propositions are established:

(1) An entryman, who, at the time of his death, has neither wife nor minor children, may devise his homestead.

(2) Where an entryman dies, and final proof is made either by an heir or a devisee the Land Department will not attempt to determine what heir or heirs, or devisee or devisees, or whether heirs or devisees are entitled to the land. Patent will be issued either to the heirs generally, or to the heirs or devisees of the deceased, leaving to the local

courts to identify the parties and determine their respective interests.

(3) Where an entryman, who has neither wife nor minor children, devises his homestead, the patent inures to the benefit of the devisee only.

(4) Neither the heirs nor the devisees take by virtue of the law of the state where the land is located. They take by virtue of the Federal statutes as successors of the original entryman. The patent issued by the Land Department whether issued to the heirs generally or to the heirs or devisees inures to the benefit of, and vests title, in the person or persons named in the Federal statute.

Clearly no inference, adverse to the plaintiff, can or should be drawn in this case from the fact that the patent is issued generally to the heirs of John Kelly. The patent by virtue of the Federal statute inured to the benefit of the person named in such statute as successor of the entryman, and vested the title in such person. If there was a devisee the patent inured to the benefit of such devisee. For, as was said by the South Dakota supreme court in Theisen v. Qualley, supra, "there can be no heirs where there is a devisee."

The trial court found, and the majority opinion also finds, that John Kelly made a will whereby he devised his homestead to his daughter, Mary Gottbreht. It is true the will was never probated. But the question here is not whether there was a valid will, but whether the will and the deed executed by Mary Gottbreht to her husband, William Gottbreht, gave a color of title upon which his claim of title by adverse possession under § 5471, Comp. Laws 1913, may rest. Color of title has been said to be "that which gives the semblance or appearance of title, but is not title in fact; that which, on its face, professes to pass title, but fails to do so because of want of title in the person from whom it comes or the employment of an ineffective means of conveyance." 1 R. C. L. p. 707. "If an instrument actually passes the title, it is clear that it is not 'color of title.' The term implies that a valid title has not passed." 1 R. C. L. p. 707. In Power v. Kitching, 10 N. D. 254, 88 Am. St. Rep. 691, 86 N. W. 737, this court held that a tax deed void on its face constituted color of title under the statute. In Petit v. Black, 13 Neb. 142, 12 N. W. 841, the supreme court of Nebraska held that a will which had not been admitted to probate, and hence was inadmissible as evidence of, and ineffectual to pass, title

to real estate, was nevertheless sufficient as a claim of right upon which a title by adverse possession might be predicated. It is generally held that a deed which purports to convey title will give color of title, although it be not acknowledged, or although it be defectively acknowledged. 2 C. J. 181. And in the absence of any statute expressly or impliedly providing otherwise, an unregistered deed will give color of title. Ibid. So will a lost deed, which is proved to have been executed and delivered. 2 C. J. 191.

"In order that a deed may give color of title it is not necessary that the grantor should have had title either to the whole or to any part of the land conveyed, unless there is some statute from which this requirement may be inferred. A deed from a mere volunteer is good color of title. A title founded on adverse possession under a deed which purports to convey the title is wholly independent of prior conveyances or of the grantor's actual title." 2 C. J. 184, § 351. "Where real estate is held in common, and one tenant assumes to convey the entire estate and does convey it by metes and bounds, the deed will give color of title as to the whole tract, and an entry by the purchaser thereunder claiming title to the whole will operate as an actual ouster and disseisin of the cotenant." 2 C. J. 185, § 355. See also Unger v. Mooney, 63 Cal. 586, 49 Am. Rep. 100; Lloyd v. Mills, 68 W. Va. 241, 32 L.R.A.(N.S.) 702, 69 S. E. 1094; Gardiner v. Hinton, 86 Miss. 604, 109 Am. St. Rep. 726, 38 So. 779.

It seems to me that the instruments under which the defendant William Gottbreht entered into and has remained in possession of the premises, gave him sufficent color of title upon which to build a claim of ownership by adverse possession under § 5471, supra.

But the majority members say that in any event no adverse possession has been shown. This holding is predicated upon the promise that the defendants originally entered into possession of the premises in controversy as cotenants of the plaintiffs. The majority members arrive at their conclusion by applying the rules applicable to a case where one who has originally entered into, and remained in, possession of premises as a tenant in common, seeks to assert title by adverse possession against his former cotenants. Of course in such case he is presumed to continue in possession in the same character in which he originally entered, and his possession does not become adverse unless

and until he does something which in effect amounts to an ouster of his cotenants. But the defendants in this case did not enter into possession of the premises with the understanding that they were cotenants of the plaintiffs or of anyone else. No one can doubt that the defendants have all the time supposed that they were the sole owners of the premises. They entered into possession as owners. From the outset they claimed the whole estate. They never for a moment supposed or recognized that the plaintiffs had any interest in the land. They knew that John Kelly had devised the land to his daughter Mary Gottbreht. They assumed that upon complying with the law and obtaining title from the United States government she would and did become the absolute owner of the land free of all claims on the part of any of the heirs. Mary Gottbreht assumed that she was the sole owner of the premises when she conveyed the tract to her husband. He assumed that he took a fee-simple title to the whole tract. From the moment of the original entry, the possession of each of the defendants was antagonistic to the claims of the plaintiffs or any of the other persons claiming to be heirs of John Kelly. And since the entry, every moment of occupancy has been a continual assertion of exclusive ownership of the premises.

In these circumstances I believe that the trial court was right in holding that the defendant William Gottbreht had been in adverse possession of the premises from 1902; and that the title which he claimed had ripened and might be asserted against the plaintiffs. See Ann. Cas. 1915C, p. 1236; 1 Cyc. 1078, 1079; Parker v. Merrimack River Locks & Canals, 3 Met. 91, 37 Am. Dec. 121; Dubois v. Campau, 28 Mich. 304; Fuller v. Swensberg, 106 Mich. 305, 58 Am. St. Rep. 481, 64 N. W. 463. See also Beitz v. Buendiger, 144 Minn. 52, 174 N. W. 440; Hahn v. Keith, 170 Wis. 524, 174 N. W. 551; Theisen v. Qualley, 42 S. D. 367, 175 N. W. 556.

BIRDZELL, J., concurs.